No. 34.—SHEPHARD ROGERS and another, executors, &c. plaintiffs in error, *vs.* MALINDA A. HOSKINS, defendant in error.

[1.] The Act of 1850, prohibiting attorneys from giving testimony, for or against their clients, does not apply to the proof of the service of interrogatories, notices to produce books and papers, and such like matters, which could be established by the oath of the party himself.

[2.] Plea of the pendency of a prior suit, for the same cause of action, and between the same parties, in another Court that has jurisdiction, is good cause of abatement.

[3.] But where the first action is so defective that no recovery can possibly be had, the pendency of a former suit will not abate the action.

[4.] Where the defendant pleads the pendency of another action, plaintiff may enter a *nil capiat per breve* in the first suit, before replying to the plea; and this will enable him to reply, safely, *nul tiel record*.

[5.] When an instrument is drawn from the custody of the adverse party, under notice, and from which he derives title to the property in dispute, further proof of its execution is dispensed with.

Application for dower, in Houston Superior Court. Decision by Judge POWERS, November Term, 1853.

The errors assigned in this cause, arose upon a motion for

Rogers and another, ex'rs, &c. vs. Hoskins.

the appointment of commissioners, to assign dower to Malinda
A. Hoskins.

Counsel proposed to prove the service of notice of the appli-
cation for dower, by P. S. Humphries, one of the attorneys for
the applicant. Objected to, on the ground that he was an in-
competent witness under the Act excluding the testimony of
attorneys at law, under certain circumstances. The Court
over-ruled the objection, and this is the first error assigned.

Counsel for applicant, then gave in evidence the marriage
license, and the return thereon, of the marriage of Harrison
D. Hoskins and Malinda Walker. Also, two deeds conveying
to Harrison D. Hoskins the premises in which dower was sought.
These deeds were not recorded.

Counsel for applicant closed, and Shephard Rogers, the ex-
ecutor, produced the remitter from the Supreme Court, show-
ing their decision upon a prior application for dower, by the
same party. It appeared that since that decision, and in va-
cation, that application had been voluntarily dismissed. Rog-
ers then moved the Court to dismiss the application—1st. On
account of the pendency of the former application, which was
not legally dismissed; and 2nd. Because there was no proof
before the Court, that Hoskins had been dead three months
before the application.

The Court over-ruled the motion on the first ground, and on
the second, held that there was record evidence, (by the former
litigation,) before him, that Hoskins had been dead more than
three months; but at the same time, allowed the applicant to
introduce farther evidence to that point. All which proceed-
ings and decisions, counsel for the executors assign as error.

Counsel for the executors moved the Court to dismiss the
application, for the additional reason that the seizin and pos-
session of the land by Hoskins, during his life, or by his ex-
ecutors since his death, had not been sufficiently proven.

The Court over-ruled the motion, (the deeds having been pro-
duced by the executors, under notice,) and ordered that the
application be granted, and commissioners be appointed. All
of which, counsel for executors assign as error.

S. ROGERS, for plaintiff in error.

WARREN & HUMPHRIES, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] Was it error in the Court to permit P. S. Humphries, one of the attorneys, to prove service of the notice of the widow's intention to apply for dower in the real estate of her deceased husband?

The objection to the evidence is placed upon the Act of 1850, which declares, that it shall not be lawful for any attorney at Law, or in Equity, to give testimony in any Court, of any matter or thing, either for or against his client, the knowledge of which he may have acquired from his client; or during the existence, and by reason of the relationship of client and attorney. (*Cobb's Digest*, 280.)

It is not pretended that the witness, in this case, "*acquired*" the knowledge of the fact about which he was called on to testify, from his client. But it is argued, that he did acquire it during the existence, and by reason of the relationship of client and attorney.

What we have to say in the first place is, that the Act purports, in its title, to regulate the *testimony* of attorneys at law. And we submit that preliminary proof, like this, for the introduction of books, papers and interrogatories, is not, technically, *testimony*, in contemplation of the Statute. It is such proof as may be made by the party himself, the Sheriff, or any other agent, official or unofficial. The Act, when restricted to the legitimate purpose for which it was passed, is a good one. It aimed a death-blow to a great evil in the land; and has consigned a few perjured pettifoggers to the obscurity from which they should never have emerged. But, so to interpret it as to prevent the service of interrogatories, notices to produce books, and papers, and such like preliminary proceedings, from being established by the oath or professional statement of the

Rogers and another, ex'rs, &c. vs. Hoskins.

attorneys employed in the cause, would be productive of the most intolerable inconvenience.

Can it be supposed that this Statute operates as a repeal of so much of the 4th section of the Act of 1845, organizing this Court, as authorizes the notice of the signing of the bill of exceptions, to be served by the *attorney* in the cause ? We think not.

[2.] Secondly, it is complained that the Court below erred, in not dismissing this application for dower, because there was. another pending between the same parties, and for the same land, at the time this was made.

This doctrine is founded, as was said in *Spary's case*, (5 *Co. R.* 61,) upon the maxim—*Nemo debet vis vexari si constet curiae quod sit pro una et eadem causa.* That is, that no one should be twice harrassed, if it appear to the Court that it is. for one and the same cause.

Perhaps there is a technical ground upon which the force of this objection could be obviated, namely : that not only the cause of action, but the *parties*, should be the same in both suits. And the ground upon which the first proceeding was set aside was, that but *one* of the *two* executors of the deceased husband had been made a party. I am aware, however, that some of the authorities incline to hold, that if the *plaintiff* is the same, and the cause of action is the same, the *defendants* need not be the same in each suit. And the cases of *Bedford vs. Bishop of Exeter et al. (Hobart R.* 170,) and *Ranlinson vs.. Oriett, (Carth. R.* 96,) may be cited on this point.

But here the right had been tried and adjudged against the widow, in the first application, before she gave notice of her intention to renew it. The facts of this case are briefly these : Malinda H. Hoskins, widow of Harrison D. Hoskins, deceased, gave notice previous to April Term, 1853, of the Superior Court of Houston county, to one only of the two executors, of her intention to apply, at that time, for dower in the real estate of her husband. At that term she did apply, and commissioners were appointed to assign her her dower, notwithstanding her name nowhere appeared in the notice, and the notice itself

was served but upon one of the two executors, living in the county where the lands lay. The judgment of the Court appointing commissioners, was excepted to, and a writ of error sued out to reverse the same. After the writ of error, citation and notice were filed in the Clerk's office of the Superior Court, and before the transcript of the record was made out, counsel for the widow, becoming satisfied that error had been committed, entered the case dismissed, in the Clerk's office, under the Act of 1843. (*Cobb's Digest,* 475.)

When the cause was called, at the ensuing August Term of this Court, at Decatur, the defendant in error declined to appear, on the ground that the original action had been dismissed in the Court below. We entertained jurisdiction, however, and reversed the judgment of the Superior Court. And it may be well questioned, whether the adverse party can dismiss his case in vacation, after a bill of exceptions has been presented and certified, and bond and security given, as provided for by the 4th section of the Act organizing this Court. Would not the *supersedeas,* under such circumstances, stay all further proceedings as effectually as an injunction in Equity ?

We retained the writ for the purpose of awarding costs, mainly, if not exclusively, and without scrutinizing, very closely, if at all, the point above suggested.

But what is the reason of the rule to which I have adverted, and to be found in all the elementary works on pleading—that the pending of a prior suit between the same parties, and for the same cause of action, is good cause of abatement ? It is because the second suit is unnecessary, and consequently, oppressive. (1 *Sand. Pl. and Ev.* 19,) and authorities there cited. (*Arch. Pl.* 320.)

[3.] But where the first action is so defective, that no recovery can possibly be had, and the second is necessary for securing the plaintiff's rights, the reason of the rule fails, and the pendancy of a former suit will not abate the second action.

Now, before the second notice was given, it was settled by the judgment of this Court, that the first application was so fatally defective, that the demandant could take nothing by it.

[4.] But there is another reply which may be made to this objection. Where the defendant pleads another action pending, plaintiff may enter a *nil capiat per breve* in the first suit, before replying to the plea, and this will enable him to reply, safely, *nul tiel record*.

Here, the *remittiter* was sent back from this Court, and made the judgment of the Superior Court of Houston county, at the November Term, 1853, annulling and setting aside the first proceedings, as completely as though they had never been. When, therefore, at this same term, this objection was made to the second application, the widow might very properly reply, that no record existed, showing the pendency, *at that time*, of any such proceeding.

[5.] Again, it is assigned as error, that the Judge allowed the case to be re-opened for the introduction of further proof, as to the death of the husband, after the argument had been commenced in the cause.

This whole proceeding is rather anomalous. It was heard, both as to its law and facts, without objection, or rather I should say, by *consent*, by the presiding Judge, without the intervention of a Jury. Six months previously, Mr. Rogers and his co-executor, Alford, were before the same Court, contesting, as executors, the widow's right of dower in and to the land of *their testator*. Still, they insist on proof that he is dead. Our brother POWERS seemed to think, that the record before him afforded presumptive evidence, at least, of the fact. Still, he did permit, and we think properly, the Ordinary to be called and examined, who testified, that before the last April Term of the Court, the defendants, as his executors, had produced the will of Harrison D. Hoskins, and had the same proven and admitted to record, in the usual form, and that letters testamentary had issued to them accordingly. With this proof, the Court was satisfied, at any rate, so far as the *executors* were concerned. And we see no reason to be otherwise.

But error is assigned to the decision of the Court, in holding that the evidence was sufficient, as to the seizin and possession of the lands by the husband.

The proof upon this point, consisted of two fee simple deeds to the premises, drawn from the custody of the executors, under notice—the one from James Alford, one of the executors, to Harrison D. Hoskins, in his life-time, for lot No. 348, containing 202½ acres, and a part of lot No. 237, containsng 162½ acres, and the other from John Bryant, to the deceased, for 33¼ acres of lot No. 237.

As these title papers were drawn out from the possession of the executors, under notice, and they derived title under them to their testator, it dispensed, of course, with any other or further proof of their execution. And as possession is *prima facie* evidence of title, so title draws, necessarily, in legal contemplation, the possession to it; so that it might be properly assumed as proven, that the husband died seized and possessed of these lands.

The only other error complained of is, that it was not sufficiently shown that the applicant was the wife of Harrison D. Hoskins.

I freely admit that the proof, upon this head, is not so full as it ought to have been, and, no doubt, might have been, when it is recollected that the parties were married in Houston county, lived there, and the husband died and was buried there.

The applicant tendered in evidence, the license issued on the 7th of July, 1843, by the Clerk of the Court of Ordinary, and directed to any ordained Minister of the Gospel, Judge of the Superior, or Justices of the Inferior Court, or of the Peace, authorizing them, or any of them, to join Harrison D. Hoskins, the deceased, and Malinda Walker, in the holy state of matrimony. On the back of this document, was the certificate of Calvin Leary, a Justice of the Peace, that Harrison D. Hoskins and Malinda Walker, were duly joined by him in matrimony, on the same day that the license issued.

The objection is, that the present applicant has a middle name, when the lady in the license had none; *ergo*, she is not the same; and that *non constat* that Malinda Hoskins and Malinda Walker, are one and the same person.

Licenses are usually procured by the bride-groom elect. He

may not know of the middle name of his intended wife; it may have been omitted by the Clerk, in filling up the license, or it may have been obtained through a next friend or grooms-man, who was more likely to be ignorant, than the husband himself, of the middle name.    Or, it may have been assumed by the wife, since the marriage, as many of these additions are.    And then, as to the suggestion that Hoskins may have had two wives by the name of Malinda, the answer is two-fold. In the first place, it is susceptible of easy proof, if such be the fact; and secondly, if he had, and either survived him, she, at any rate, is entitled to be endowed of his estates.

Upon the whole, had any meritorious defence been filed in this case, we might have felt it to be our duty to have considered, with more indulgence, some, at least, of the errors alleged to have been committed.    But the case on the record being of a different character, we are disposed to look with more favor upon the other side, it being the cause of a woman, and a widow—a *widow woman* who, next to the orphan, is entitled to the protection of the law.

Judgment affirmed.