THE NATIONAL BANK OF AUGUSTA, plaintiff in error, *vs.* THE SOUTHERN PORCELAIN MANUFACTURING COMPANY *et al.*, defendants in error.

1. The act of August 23d, 1872, which authorizes persons other than the defendants of record, to make, under oath, pleas in defense of suits to which they are not parties, is in conflict with article III., section 4, paragraph 5, of the constitution, and therefore is unconstitutional and void.

2. A manufacturing company incorporated by the legislature of South Carolina, but which transacted its business and had its principal office in Georgia, and became indebted under and by virtue of contracts made in Georgia, is liable to suits upon such contracts in the courts of Georgia, though at the time of the institution of the suits no business is being done by the company, the president of the company and a majority of the stockholders having always resided, and still residing, in Georgia, all the meetings of the stockholders having been held in Georgia, the books being in Georgia in the hands of the president, and a notice for a meeting of the stockholders in Georgia pending at the time of the commencement of the suits, the company having at that time no office or place of business anywhere in South Carolina.

3. Service upon the president of the company in the county of Richmond, where he resided at the commencement of the action, and where the books of the company were, and where the stockholders were under notice to meet, is sufficient service upon the company.

Constitutional law.   Pleadings.   Corporations.   Jurisdiction.   Service.   Before Judge GIBSON.   Richmond Superior Court.   October Term, 1874.

Reported in the opinion.

FRANK H. MILLER, for plaintiff in error.

BARNES & CUMMING, for defendants.

JACKSON, Judge.

This action was brought for the recovery of a large sum of money due the plaintiff by the defendant upon contracts made

in Augusta, Georgia. Service was made upon James Hope, the president of the defendant, the Southern Porcelain Manufacturing Company, at Augusta, in the county of Richmond, in this state. A plea to the jurisdiction was filed by the said James Hope, not as president of the company, but in his individual character, as one interested in the suit, though not a party thereto, under the act of 23d of August, 1872, setting up the fact that the defendant was incorporated in South Carolina and could not be sued in the courts of Georgia except by attachment. The court below sustained the plea and the plaintiff excepted, and three questions are made here for our adjudication : 1st. Can one, not a party to the suit, but merely swearing that he is interested therein, put in a plea to the jurisdiction ? 2d. Can a South Carolina corporation, under the facts disclosed in the record, be sued in Georgia ? 3d. Is service upon the president of the defendant, under the facts here, sufficient service ?

1. In regard to the first question, we think the act of 1872 broad enough to cover all pleas. It enacts that " any party interested may make his or their plea or pleas, and such plea or pleas shall be as good in law as if made by the real defendant to the record." If that act be law, the plea may have been made legally by Hope individually. Is it law ? That turns upon the point of the constitutionality of the act. The latter branch of the fifth paragraph of the fourth section of the third article of the constitution is in these words : " Nor shall any law or ordinance pass, which refers to more than one subject matter or contains matter different from what is expressed in the title thereof." The substance of the body of this act is, that anybody interested may defend and plead. The title thereof is " An act to amend an act approved October 24th, 1870, entitled an act to authorize all pleas and defenses to be sworn to before certain officers of other states or countries, and to prescribe the legal effect of the official attestation of such officer, and to carry into effect article five, section three of the constitution of this state." There would seem to be on the face of this title two subjects matter, both

of which appear to us to be different from the body of the act. The body of the act is to enable persons, not parties of record, to defend suits not *brought* against themselves by filing any plea they please thereto whether the real defendant defends or not, if they be interested therein. The title, in one of its phases, is to amend an act which has relation only to how pleas shall be verified if the party to the record be beyond the limits of the state. We think the body of the act differs essentially from such title. An amendment to an act authorizing parties out of the state to verify pleas, should have relation to pleas made outside of the state and by parties to the record, and by reading the title to this act we think that no one could reasonably expect to find in its body authority to anybody, in the state or out of it, to defend cases when he is not sued at all.

If we look to the other phase of the title, it does not help the act much. This part of the title is to carry into effect article five, section three, of the constitution. That section of article five embraces many subjects. It is divided into four paragraphs. The only one to which the act can be supposed to refer is the latter part of paragraph three, which reads: "The court shall render judgment without the verdict of a jury, in all civil cases founded on contract, where an issuable defense is not filed on oath." Even if this paragraph were directly referred to in the title, we cannot see exactly how this act carries it out. The object of the constitution in requiring the title and body of the act to harmonize is to put the legislators upon warning as to what they are about to do. We do not think this title does so. It would have been quite easy, and it would indeed have required fewer words than this title contains, to have entitled this enactment, "an act to allow all persons interested to defend by plea, suits where the real defendant to the record declines to do so." Instead of this plain sailing, the colors under which this legislation rides are double, confused and seemingly disguised. We consider the act mischievous in its tendency and results. Any creditor of the same defendant under it might swear he was interested in or-

der to postpone the plaintiff; it seems to us it can do no good, but is fruitful of confusion and litigation—of endless litigation. Every stockholder of a corporation can, under it, plead, and as one falls, another take his place, and the war be interminable. And who is to be responsible for costs? Shall the defendant to the record be mulcted in costs when he did not wish to litigate, but was content to let judgment go by default? If the general assembly sees fit to enact such a law, we must, of course, enforce it; but we must be sure they intended to enact it, and used all the precautions and safeguards which the constitution demands in order to prevent mistake, inadvertence and surprise.

2, 3. But suppose that this plea had been made by the president of the company, would it have been good under the facts? The facts are, that this company, though chartered in and by South Carolina, did all its business in Georgia; its principal office was in Georgia; its president and most of its stockholders resided in Georgia; their meetings were held in Georgia, and a call for a meeting was pending at the time this suit was commenced, to be convened in Augusta, Georgia. Augusta was, to all intents and purposes while it did business, the place of its residence; the notes sued on were made there, the books were kept there, and were there in the hands of the president when he was served. The company had no residence other than Augusta, in Georgia, nor had it any place of business or office in South Carolina when the suit was brought. The naked question then is, can a corporation, foreign in its birth, do business in Georgia, contract debts here, suspend its business, for at the time the suit was brought it had ceased to do business, and thereby escape suit here by the regular process of our courts. The principles laid down by this court in the case of *The City Fire Insurance Company of Hartford vs. Carrugi*, 41 *Georgia*, 660, seem to settle this question. It is there distinctly ruled that a foreign corporation doing business in this state is subject to the jurisdiction of our courts. It is difficult to see how it could be otherwise. If by comity such a corporation is permitted to do

business here, it ought to pay its debts here; and if it fail to pay, it ought to be made to do so; and our own courts should not turn over our people, with whom it has been permitted to deal within our jurisdiction, to a foreign jurisdiction and foreign courts, to constrain the corporation to pay the debts contracted here. That case further decides that such foreign corporation, if it have an officer or agent here, may be served by serving its officer or agent. In this case the principal officer has always been here, and was here, and was served. It is true that the company had ceased or suspended active business in the case at bar, but a meeting of its stockholders had been called to convene in Augusta, and the notice was pending when the suit was brought. It had not ceased, therefore, to do business in Georgia. It was about to meet in organic assembly of the corporators to transact business here, and why should it not be sued here, if it could be served. By the common law, process against a corporation must be served on its principal officer: Angell & Ames on Corp., sec. 404. If that principal officer has always resided here, and did reside here when served, it is difficult to see why the service is not good. Even if the facts did not show that the company was about to meet in Augusta for some business or other, it matters not what, yet as long as the principal officer was there, and the books were kept there, we think the company was liable to suit there.

The plea to the jurisdiction must give a better place to sue within the jurisdiction. Richmond county is the only place where this corporation ever lived in Georgia, and whatever is left of it lives there still. Even if this principle were extended to all states and countries, the plea and facts here show no better place to sue, no court having jurisdiction even in South Carolina, there being no place where it does business or has an office now in that state.

In the case cited from 41 *Georgia*, the court says that nonresidence is no defense, if the defendant has been legally served, and "if a company were to locate an office in *another state*, and its principal officer were to do business there, there

could be no question upon his liability to be served." This would seem to cover the third point as to whether service upon the president here was good service. These principles are in accordance too, it strikes us, with sound sense and right reason. It would be an outrage upon all sound principle to allow any body, natural or artificial in person, to do business in Georgia, be protected by our laws, sue any body the foreigner sees fit, make money out of our people, contract debt, and then shut down, stop business, refuse to pay and defy our process. If the principal officer still linger in the state and can be caught and served with process, the corporation, like any other foreigner, must respond. Our courts render judgment according to law, and if that judgment be against the defendant, it will be enforced upon all the property our final process can reach.

Judgment reversed.