THE NATIONAL BANK OF AUGUSTA, plaintiff in error, *vs.* THE SOUTHERN PORCELAIN MANUFACTURING COMPANY, defendant in error.

This case was argued at last term, and decision reserved.

1. Where a plea to the jurisdiction has been filed, though subseqently held defective by the supreme court, it is not too late, on the presentation of the *remittitur*, to plead *res adjudicata*. Practically speaking, this is a plea in bar, and could come in as an amendment to the general issue, which is considered filed in all cases which are answered at the appearance term.—(R.)

2. Judgment having been confessed in another state as collateral security on a note given as collateral to two other notes, which were retained by the holder in this state, and the confession being held invalid by the courts of that state, the only matter which is *res adjudicata*, is the invalidity of the judgment so confessed. The original notes, which remained in the creditor's hands, and were not declared upon there, are unaffected by the adjudication there.

Judgments. Collateral security. Debtor and creditor. Before Judge GIBSON. Richmond Superior Court. April Term, 1876.

Reported in the opinion.

FRANK H. MILLER, for plaintiff in error.

BARNES & CUMMING, for defendant.

JACKSON, Judge.

This suit was brought by the bank against the company on two promissory notes, one for $20,613.75, dated 24th of March, 1868, and due thirty days thereafter, and the other for $35,185.86, dated and due at the same time, and upon one draft for $887.48, dated October 3, 1870, and due in thirty days. The first note was signed by the company, by Bullock, president, and indorsed by him individually. The

158    SUPREME COURT OF GEORGIA.

The National Bank of Augusta *vs.* The Southern Porcelain Manufacturing Co.

second was signed by G. Schaub, as general agent of the company, and indorsed by Bullock as president, and individually; and the draft was drawn by G. Schaub, agent of the company, upon J. Armstrong, Jr., & Co., of Charleston, S. C., payable to the order of Schaub individually, and indorsed by him as agent, and individually.

To this suit a plea to the jurisdiction was filed by James Hope, in his individual character, and not as president of the company—as one interested in the suit—under the act of 1872, which enacts that any person interested may plead and defend a suit.

When this case was before us—as reported in 55 *Ga.*, 36 —we held that the act allowing that to be done by any interested person, not a party defendant to the suit, was unconstitutional, for reasons then given; and we further held that even if the plea had been filed by Hope as president, it was bad—the Georgia court having jurisdiction, as we thought— and that service upon Hope, as president, was sufficient service. Upon this ruling the case was sent back for trial, and when it returned to the court below, the defendant pleaded *non est factum* and *res adjudicata*, besides the general issue.

Whereupon the plaintiff moved for judgment, because these pleas were too late; this was refused; and plaintiff filed an interlocutory bill of exceptions. At a subsequent term, the case was called for trial, and defendant pleaded further, that the two notes were paid and discharged by another note, which the bank received in payment of the two notes.

On these pleas issue was joined, and the parties went to trial.

The jury returned a verdict for the defendant on the plea of *res adjudicata*, and the plaintiff moved for a new trial; the motion was overruled, and the plaintiff excepted, and brought the case here.

Inasmuch as the jury passed only upon the plea of *res adjudicata*, and did not pass upon the other questions made by the other pleas, and as the court below would have granted

a new trial, and corrected its own errors, if any were committed, in admitting evidence, and charging the jury on the other pleas, but for the finding on that plea of *res adjudicata*, we shall confine ourselves to the questions made on that issue, which was the only issue passed upon by the circuit court, and therefore the only issue properly for review by this court.

That plea is was follows: " And for further plea in this behalf, defendant says that the same cause of action has been sued to final judgment between plaintiff and defendant in courts having jurisdiction of the parties and the subject matter, to-wit : In the court of common pleas for the county of Edgefield, in the state of South Carolina, and in the supreme court of South Carolina, the suit having been transferred by appeal from said court of common pleas to said supreme court, in which latter court a final judgment on the merits, was rendered against plaintiff at the April term, 1874, of said court; and defendant annexes to the plea, and as part thereof, a complete transcript, duly authenticated, of the record of said suit; wherefore," etc.

1. The first question made in the record on this plea is that it came too late, error being assigned here on the interlocutory bill of exceptions, which made the point that it should have been filed at the first term.

Without entering at large upon the question, whether or not this plea, *res adjudicata*, should be filed generally at the first term, it is enough to say here that a plea to the jurisdiction was then pending. It is true that it was defectively pleaded—that James Hope should have pleaded as president of the company, and not as a stockholder and interested therein—but still that plea was in, and until it was disposed of we are not inclined to debar the defendant from putting in any substantial defense on the merits. While technically, and in section 3476 of our Code, it may be styled a plea in abatement, it really, if good, is a substantial bar to the action. If a court of competent jurisdiction did pass upon the merits, and pronounce judgment

thereon, the case is ended, just as effectually killed as if a plea of payment, or *non est factum*, had been sustained.

Besides, the general issue is always considered as filed at the first term; and if that was in when the counsel answered to the case, all substantial pleas could be added thereto by amendment. See Code §§3458, 3461, 3479.

We hold, therefore, that the court was right to allow the plea to be filed on the return of the remittitur from this court, and not to grant the plaintiff's motion for judgment on the return of the cause from this court.

2. On the trial of this plea, many requests by counsel for both parties were made, and various charges were given, but the controlling question at last is, was the plea of *res adjudicata* by the South Carolina courts sustained by the record from that state, and did that court adjudge the merits of this case—the case on the notes? It may be well to remark here, that the draft is out of this question—there being an agreement of counsel in relation to that paper.

Ought the court to have granted a new trial because the verdict was against law and evidence on the plea on which alone the jury passed? That is the gist of the case, and to that question we have devoted our attention and time, and have considered it with that carefulness which the importance of the case, and the magnitude of the interest at stake, as well as the principle involved, demand at our hands.

In his brief opinion overruling the motion for a new trial, the presiding judge says: "The evidence in this case discloses very large sums of money borrowed on the credit of the Porcelain Manufacturing Company by its former president. If the stock paid in and material sold, went to the extinguishment of this sum borrowed, it nowhere clearly appears from the evidence. It would, therefore, seem as a matter of fact, that the sum borrowed is still due from somebody to the plaintiff, unless the judgment of a court in South Carolina can be said to be a *payment*. As the claim, however, has been passed upon in the courts of

South Carolina, where the charter was obtained, and all the property of defendant located, I am not disposed to interfere with that judgment, and, therefore, overrule this motion for new trial on all the grounds taken by plantiff." So that the presiding judge refused the new trial because he felt bound by the South Carolina decision, just as the jury found their verdict on that plea. If the jury and the judge were wrong on that issue, which controlled both in the court below, there must be a new trial. Whether they were right or wrong, depends upon the South Carolina judgment, its extent and what it embraced. If the courts there passed upon the merits of the claim pending here, the plea is good; if not, it is bad, and will not estop the plaintiff from trying the claim on its merits here.

What, then, was the judgment of the supreme court of South Carolina? What was the question before that court, and what did it decide?

It appears from the record that a note for some fifty-six thousand dollars was given by Bullock, as president of the company, as collateral to the two notes sued on here, embracing the sum of these two notes, on which a confession of judgment was to be taken in South Carolina, under the laws of that state, in behalf of the bank, as security for the payment of the two notes. The two notes sued on here were not taken up by the company, but were retained by the bank. It further appears that a confession of judgment was signed by Bullock, in the circuit court for Edgefield, in South Carolina, and that an action was brought by the company to set aside the confession, under the Code of procedure of South Carolina; that the circuit court made a decree dismissing this complaint; that the case was taken to the supreme court of South Carolina, and there the whole action to vacate the judgment, so confessed, was dismissed, because it was not properly brought under the South Carolina Code —the supreme court indicating that the proper mode of proceeding, would be a motion in the circuit court to set aside

the confession, and an appeal, if necessary, from that court to the supreme court.

Accordingly, it further appears, that on the 1st of January, 1874, notice was served upon Thew, the cashier of the bank, in whose name the South Carolina confession judgment was obtained by the bank, that a motion would be made to set aside that judgment.   On the 23d of January, a similar notice was served on account of some informality in the proceedings about the first, and a day was fixed for the hearing. Thew replied to the rule that the confession was made in 1868, and the limitation laws and acquiescence for near six years barred the motion; that it was made on a *bona fide* debt; that if there was any fraud about it, Bullock, the president, and Schaub, the agent of the company, committed it, in that they gave notes of $35,185.86 and $20,615.75 to the bank, which were consolidated in this note on which the confession was made; that the case is *res adjudicata* by the judgment on the former action, brought to set aside the confession, and that the court had no jurisdiction.   Affidavits of Jackson, president, and Thew, cashier, and Gould, solic_itor of the bank, when the confession was agreed upon, were used to support this reply to the rule.

The circuit court passed an order requiring issues and pleadings to be made up, from which both parties appealed to the supreme court, and made, in that appeal, questions relating to the validity of this confession of judgment—the one side insisting that it was legal and valid, and the other that it was invalid, and should be set aside, mainly ·because it was given before action was brought, and by the president in Georgia without authority of law.   The result was, that. when the case was taken to the supreme court, notwithstanding that it was taken up from an· interlocutory order of the circuit court, it was nevertheless decided upon *its merits* by consent of counsel—the argument not being confined to the points ruled by the circuit court.   These facts appear of record, and by the South Carolina decisions, incorporated and referred to in the record.   The *merits* referred to, however,

it clearly appears from the opinion of the court, was the invalidity of the confession of judgment. The opinion and judgment of the court are, that the confession of judgment on the fifty-six thousand dollar note be vacated and annulled, because Bullock, the president of the company, had no legal authority or power to make the confession and bind the property of the company. It goes no further. In the outset of the opinion, the court says, " the confession of judgment is the subject of the present litigation," and " its validity is the question now for our determination." See 5 Richardson, 420. It is true that the court does discuss the power of the president to borrow money without express authority, and it argues that the authority was not given in these transactions, because the stockholders preferred to be their own creditors, and had given their own notes to the bank to pay the indebtedness of the company, and did not, probably, therefore authorize Bullock to bind them to an unlimited extent; but all this was argument auxiliary to the main question. For the court goes on to say, after quoting from 4th Paige, 134 : " So here, unless there is something to justify the bank in supposing that Bullock had power to secure the debt by giving a judgment, the confession is void and without effect. Even if conceded that Bullock had power to contract debt for the company to an unlimited extent, this could not imply the right to confess judgment to a creditor. The authority to contract debt for, and in behalf of, the company is one thing, but the right to give preference to a creditor is another ; and it is still another to give a lien, which binds the whole property of the corporation, depriving it of the power to dispose of any of it, no matter what the pressure or necessity, or how small the whole debt in comparison with the value of the property bound, without permission of the creditor who may hold such lien."

These extracts from the opinion, and its whole current and spirit, show conclusively that the only judgment rendered in South Carolina was, that the confession of judgment in that state was void. Even if that confession had

164    SUPREME COURT OF GEORGIA.

The National Bank of Augusta *vs.* The Southern Porcelain Manufacturing Co.

been made upon the notes sued on in the case at bar, the setting the confession aside would hardly have been such an adjudication as would bar this suit; because the real merits of the debt would not have been passed upon, but merely the irregularity, or illegality, of a confession procured from a party who had no right to give it.

But when it is remembered that the confession was upon a collateral note, and to be collateral security for the eventual payment of these two notes, and that these two notes had indorsers upon them, while the collateral had none at all, all doubt, if, indeed, in the other case there would have been any, vanishes; and it is clear that these notes never have been adjudicated at all. Their validity, as evidence of debt, in a case where they were declared upon, has not been passed upon, and no *res adjudicata* of the matter of this suit has been had. As to these notes sued here, the plaintiff has never had his day in any court.

The opinion of the supreme court of South Carolina itself, shows that unless the merits are passed upon, there cannot be any valid plea of *res adjudicata.* For this very case, to set aside this confession of judgment, had been passed upon by the South Carolina courts; but the case went off because the form of action was not right (see 5 Richardson, 5), and because it went off not upon the merits of the question, whether the confession was valid or invalid, it was held not to be a good plea of *res adjudicata.* See 5 Richardson, 427. The court, in that part of the opinion, says: "The ground assumed by the appellant, that the matter is *res adjudicata,* cannot be maintained. The judgment of this court, in the case of the Porcelain Manufacturing Company *vs.* Thew, did not dispose of the merits, or pass on any of the points on which the circuit judge based his decree." . . . . . . . . "The merits were not determined." The note to the Duchess of Kingston's case, 2 Smith's Lead. Cases, 672, is then quoted as expressing the true rule, which we, too, approve and adopt: "It is well settled that the estoppel of an adjudication made on grounds purely

technical, and under such circumstances that the merits could not come into question, will be limited to the point actually decided, and will, therefore, not be a bar to a subsequent action brought in such a form as to avoid the objection which proved fatal to the first."

Sound sense, as well as the adjudications of the courts, lay down the rule *that the rights* of the parties must be actually considered and adjudicated before the former adjudication will bar the subsequent suit. In other words, the merits of the case between the parties must be adjudicated. See, further on this subject, our own Code, §3476; Dudley's R., 254; 4 *Ga.*, 558; 6 *Ga.*, 495; 7 *Ga.*, 211; 15 *Ga.*, 270; 19 *Ga.*, 413; 31 *Ga.*, 668; 32 *Ga.*, 63; 49 *Ga.*, 412; 54 *Ga.*, 575; 55 *Ga.*, 354, 228; 56 *Ga.*, 520; 1 Otto, 534; 4 Otto, 351, 400, 423, 477, 606, 644; Code, §§2897, 2898.

Thus we conclude, after a careful consideration of this verdict and judgment on the plea of *res adjudicata*, that the verdict and judgment thereon are against the law and the evidence, and that there must be a new trial.

On the new trial, the questions left open will be, how far this company was bound by the acts of the president and agent in giving these notes, what authority they had, and whether these notes have been fraudulently obtained, or have been paid by the notes which these corporators individually gave to satisfy the debts due the bank by the company. Upon these questions, and others which may be made, we say nothing now; but we are clear that the court erred in not granting the new trial, on the plea of *res adjudicata*, which was improperly sustained, and reverse the judgment on that ground.

Judgment reversed.