**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1564. BANK OF AMERICA v. CUNEO et al.

BARNES, Presiding Judge.

In 2003, Bank of America's predecessors refinanced the mortgages on a real property owned by Mark and Traceylynn Cuneo as joint tenants with rights of survivorship, but issued the promissory notes to and obtained deeds to secure debt only from Mr. Cuneo.[1] In 2012, Bank of America ("BOA" or "the Bank") sued the Cuneos, seeking an equitable reformation of the security deeds to add Mrs. Cuneo's name, contending that her failure to convey her undivided one-half interest in the property when the mortgage debt was refinanced was a mutual mistake contrary to the parties' intentions. The bank moved for summary judgment. Mrs. Cuneo denied that she intended to borrow the money, and the trial court denied the bank's motion, sua

---

[1]The loans were secured by a first priority security deed for $250,800 and a second priority security deed for $71,000.

sponte granting summary judgment to the Cuneos instead. The bank appeals, and for the reasons that follow, we reverse.

"On appeal from the grant of summary judgment, [the appellate court] conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citation and punctuation omitted.) *Cartersville Ranch, LLC v. Dellinger*, 295 Ga. 195 (758 SE2d 781) (2014).

So viewed, the record shows that in July 2001, Mark Cuneo granted to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Wieland Financial Services, a deed on his home in Fayetteville to secure a $37,100 loan. MERS assigned that deed to Chase Manhattan Bank USA, NA, in July 2001. The deed securing the July 2001 loan recited that it was subordinate to a First Deed to Wieland from Mr. Cuneo dated April 2001, which secured a $275,000 loan.

In addition to the other documents involved in the July 2001 second mortgage, the closing attorney prepared a warranty deed that Mr. Cuneo signed granting himself and his wife, Traceylynn Cuneo, joint tenancies in common with rights of survivorship. The warranty deed was filed at the same time as the deed to secure the $37,100 loan, both of which were signed only by Mr. Cuneo. In response to an

2

interrogatory, Mr. Cuneo said that the July 2001 closing attorney was chosen by the lender or seller, that he did not pay the attorney to draft the warranty deed transferring title to himself and Mrs. Cuneo as joint tenants, and that he did not understand the import of the warranty deed when he signed it, along with all the other closing documents.

In April 2002, both Mark and Traceylynn Cuneo granted a deed to E*Trade Bank on the property to secure a maximum lien of $72,000. This deed refers to both the April 2001 deed from Mr. Cuneo to Wieland Homes securing the $275,000 loan, and the subordinate July 2001 deed from Mr. Cuneo to MERS that secured the $37,100 loan. MERS subsequently assigned the $37,100 July 2001 deed to Chase, and Chase cancelled it in March 2012, but the record does not establish whether or not that loan was paid off from the E*Trade loan.

On June 25, 2003, Mark Cuneo applied to refinance the loan on the Cuneos' house. His loan application, which was completed by an employee of First Integrity Mortgage Corporation, includes no co-borrower information. On the application form, under "Legal description of Subject Property" is written "SEE TITLE REPORT"; under "Title will be held in what Name(s)" is written "Mark Cuneo"; under "Manner in which Title will be held" is written "Joint tenants"; and under

3

"Declarations," the form indicated that Cuneo had held an ownership interest in property in the last three years jointly with his spouse. The application showed that Cuneo's liabilities included $270,114 owed to Washington Mutual[2] and $71,034 owed to E*Trade, and that he sought a loan of $341,148, less "subordinate financing" of $71,000, for a total loan through First Integrity Mortgage of $280,250.

The application does not identify Traceylynn Cuneo anywhere and was signed only by Mr. Cuneo, as was a 30-year promissory note also dated June 25, 2003, for $280,250, which identifies the lender as "America's Wholesale Lender" ("American Wholesale"). The record also contains two deeds of the same date signed only by Mark Cuneo, one securing the $280,500 loan from America's Wholesale and naming MERS as the grantee, and the other securing a loan for $71,000 from Countrywide Bank. The record does not include the $71,000 promissory note referred to in the second security deed, but the deed indicates that the terms of this loan differed from the first, being for example a 15-year loan rather than a 30-year loan and from a different lender. Both the first mortgage debt to Wieland Homes for $270,114 and the

---

[2]Wieland Homes apparently assigned its interest in the deed to secure debt to Washington Mutual, although that assignment is not included in the record. It does not matter, because neither Wieland Homes' interest nor Washington Mutual's interest in the property is relevant to the issues on appeal.

4

second mortgage debt to E*Trade were paid from the proceeds of the June 2003 loan. The deed to secure the $72,000 debt from the Cuneos to E*Trade was cancelled in August 2003. MERS assigned its interest in the $280,250 mortgage to Bank of America's predecessor in November 2010.

In July 2010, the Cuneos filed a joint petition for a Chapter 7 bankruptcy. The Cuneos represented in their schedule of real property that they jointly owned the property at issue here and that it was currently valued at $256,000 and encumbered by a secured claim for $315,934. Their bankruptcy "Schedule D – Creditors Holding Secured Claims," identified the bank's predecessor as holding a secured claim on the property for the first mortgage of $250,245, none of which was unsecured, and identified the Bank's predecessor as also holding a second mortgage claim of $65,689, $59,934 of which was identified as unsecured. Both debts were labeled as joint. The Cuneos claimed that the property was exempt from being used to pay their creditors, that the value of their exemption was zero, and that they intended to retain the property and reaffirm the debt secured by the property.

In November 2010, the Bank moved for relief from the automatic bankruptcy stay and obtained a hearing date of December 10, 2010, but the Cuneos received a discharge from the bankruptcy court prior to the hearing date. Finally, the record

includes a March 2011 application and affidavit from both Mark and Traceylynn Cuneo as co-borrowers on the property, seeking a hardship mortgage modification of the loan serviced by the Bank's predecessor under the "Making Home Affordable Program."

In July 2012, the Bank as the successor-in-interest of both 2003 lenders filed a complaint against Mark and Traceylynn Cuneo, seeking equitable reformation of both 2003 security deeds by adding Mrs. Cuneo's name to them as an additional grantee, "to make these security deeds consistent with title ownership of the Property." [3]

Following discovery, the bank moved for summary judgment on its equitable reformation claim, arguing that both of the Cuneos had applied for the loan, that the loan application completed by the lender indicated that Mr. Cuneo's interest in the property was a joint tenancy, and that the title report the lender received before closing revealed that the property was owned by both of the Cuneos. It further argued that the two security deeds were mistakenly executed by only Mr. Cuneo and that

---

[3] The bank also included claims against Mr. Cuneo for fraud and to recover under the $280,500 promissory note he had signed, but later dismissed those claims with prejudice, explaining at a hearing that both claims had been discharged in bankruptcy.

6

without both names on the deeds, the bank could only foreclose on Mr. Cuneo's undivided half interest in the property.

The Cuneos objected to the motion, and Mrs. Cuneo submitted an affidavit denying that she had intended to borrow the money and averring that any mistake in excluding her from the deeds and notes was not mutual. She further claimed that she would be prejudiced by having her name added because if the Bank then foreclosed, the foreclosure would appear on her credit report and affect her ability to borrow money. The Cuneos further argued that Mr. Cuneo did nothing to deceive the bank, which knew the property was jointly owned before the closing, as indicated by the loan application and title report. They concluded that because the mistake was not mutual, the bank's negligence combined with the prejudice to Mrs. Cuneo if the deeds were reformed, foreclosed the bank's right to the equitable relief it sought.

At a hearing on December 4, 2012, the trial court made an oral ruling denying the bank's motion for summary judgment, but the order was never reduced to writing and filed. In February 2013, the bank filed a motion for reconsideration of the court's (unfiled) order denying its motion for partial summary judgment, and the court held another hearing in August 2013. At the end of the hearing, the Bank agreed with the trial court that its only remaining claim was for equitable reformation and that the

7

court was entitled to rule sua sponte on summary judgment to the defendants. A written order denying the bank's motion for partial summary judgment was finally filed in October 2013, immediately followed by an order denying the bank's motion for reconsideration and sua sponte granting summary judgment to the Cuneos.[4]

In its written orders, the trial court found no dispute as to the following facts: the 2003 loan application and the lender's title report showed that the property was titled as a joint tenancy; Mrs. Cuneo was never required to sign a promissory note or security deed during the refinancing; the lender had a full and fair opportunity to litigate Mrs. Cuneo's obligation on the debt during the Cuneos' bankruptcy proceeding; the only claim remaining in the case was for reformation of the security deed; and the Bank presented evidence and argument in opposition to a grant of summary judgment in favor of the Cuneos in addition to evidence and argument in support of its motion. The court concluded that the Bank was stopped from asserting that Mrs. Cuneo was obligated on that debt, denied the Bank's motion to reconsider

---

[4]The parties discussed at the second motion hearing why the trial court never entered a written order denying the bank's motion, and why, despite the trial court's directive at the end of that hearing ordering the Cuneos' lawyer to draft an order, the trial court still had to issue a subsequent written order directing both lawyers to appear at a hearing if the Cuneos' lawyer did not submit a proposed order to the bank's lawyer in 10 days.

8

its denial of summary judgment to the bank, and granted summary judgment to the Cuneos.

The bank initially appealed to the Supreme Court, which determined that the issue did not involve title to land and transferred it to this court. While the bank enumerates four separate errors, all are basically related to its contention that the trial court erred in denying its request to reform the deed and in granting summary judgment to the Cuneos.

1. The bank is correct that its security interest in the property is incomplete, because "the execution of a deed to secure debt by a joint tenant in real property is not such a transfer of all or a part of the grantor's interest in the property as would sever the joint tenancy with right of survivorship." *Biggers v. Crook*, 283 Ga. 50, 52 (1) (656 SE2d 835) (2008). Further, the fact that the underlying promissory note was discharged in bankruptcy is not dispositive. "The bankruptcy of the grantor in the original deed and his discharge in bankruptcy did not destroy the power contained in the original deed; for it was a power coupled with an interest." *Wallace v. Commercial Bank*, 159 Ga. 388 (2) (125 SE 845) (1924). See also *Potts v. McElroy*, 209 Ga. 244, 247-248 (2) (71 SE2d 612) (1952); *Thomas v. Stedham*, 208 Ga. 603, 606 (2) (68 SE2d 560) (1952); *Smith v. Farmers Bank of Glenwood*, 165 Ga. 470

9

(141 SE 203) (1928). "Although [Mr. Cuneo] may have been discharged from any in personam liability with respect to the judgment of indebtedness, such discharge did not cancel the title to the real estate held by [Bank of America] under its deed to secure debt, nor did such bankruptcy affect its power of sale contained therein." *Mickel v. Pickett*, 241 Ga. 528, 535 (4) (247 SE2d 82) (1978).

2. As to the bank's claim for equitable reformation of the security deeds, under Georgia law, "[i]f the form of conveyance is, by accident or mistake, contrary to the intention of the parties in their contract, equity shall interfere to make it conform thereto." OCGA § 23-2-25. "This statute applies when the form of conveyance is a security deed." (Citation and punctuation omitted.) *Vibert v. Bank of America, N.A.*, 327 Ga. App. 782, 783 (761 SE2d 162) (2014).

> In all cases where the form of the conveyance or instrument is, by mutual mistake, contrary to the intention of the parties in their contract, equity will interfere to make it conform thereto. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced. A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance.

10

(Citations and punctuation omitted.) *DeGolyer,* 291 Ga. App. at 447 (1) (affirming grant of equitable reformation of security deed when evidence undisputed that both borrower and lender intended to secure loan with property). See OCGA § 23-2-21 (a). "Where reformation is sought on the ground of mutual mistake, it must, of course, be proved to be the mistake of both parties." *Cotton States Mut. Ins. Co. v. Woodruff,* 215 Ga. App. 511, 512 (1) (451 SE2d 106) (1994).

> The interposition of a court of equity to correct mistakes, both as to law and fact, by ordering a proper deed to be executed, according to the true intent of the parties, is a very ancient doctrine. It has always been a familiar branch of equity jurisdiction to grant relief to parties against agreements made under a misconception of their rights. In every proper case under this head of the law, the only inquiry is, does the instrument contain what the parties intended it should and understood that it did? Is it their agreement? If not, then it may be reformed by aliunde proof, so as to make it the evidence of what was the true bargain between the parties. And it is wholly immaterial from what cause the defective execution of the parties originated.

*Cheatham v. Palmer,* 191 Ga. 617, 625 (a) (13 SE2d 674) (1941).

The Cuneos contend that Mrs. Cuneo's affidavit stating that she did not intend to be a party to the 2003 refinancing loans established as a matter of fact that any mistake regarding the security deeds was not mutual. Essentially, they argue that

11

the doctrine of equitable reformation requires the Court to find that the parties were acting under the identical mistaken belief. . . . While courts have often described the doctrine as requiring a 'common mistake,' it is not clear that courts have applied that requirement as strictly as [the Cuneos] would urge the Court to do.

*Stearns Bank, N.A. v. Rent-A-Tent, Inc. (In re Rent-A-Tent)*, 468 B.R. 442, 453 (B) (Banr. N.D. Ga. 2012). We agree with the bankruptcy court that the doctrine of mutual mistake is not so narrow as to foreclose its application simply by one party's affidavit asserting that she did not intend to borrow the money. The issue is whether the parties mutually intended for the bank to lend money and for the loan to be secured by the property, and in considering that issue, the court may consider other evidence related to the loans and deeds.

For example, in *DeGolyer*, 291 Ga. App. at 447 (1), we affirmed the trial court's reformation of the security deed where both the bank and the borrowers knew the borrowers' corporation owned the property, but the bank mistakenly thought the corporation had conveyed the property to the borrowers before the transaction closed. Id. The borrowers knew the corporation had not conveyed the property to them, and thus the parties mistakes were not literally exactly the same. The issue the court considered was whether the form of the security deed was consistent with evidence

12

that the lender and the borrowers mutually intended that money would be loaned and the resulting debt would be secured by the real property at issue. Id. at 447 (1).

In this case, other evidence established that the mistake was "sufficiently mutual . . . to find that the true intention of all three parties was for [the bank] to loan funds [to refinance] the real property and to take a security interest in the [entire] propert[y]." *In re Rent-a-Tent,* 468 B. R. at 453 (B). That evidence includes the fact that a portion of the 2003 loan paid off a joint debt of Mr. and Mrs. Cuneo that had previously been secured by the property. Further, the Cuneos subsequently represented to the bankruptcy court that the debt secured by the property was jointly owed, as they did again in a subsequent loan modification application. This evidence, in contrast with Mrs. Cuneo's affidavit, creates a question of fact as to whether that the parties mutually intended that money would be loaned and the resulting debt would be secured by the real property at issue. Thus, the trial court erred in granting summary judgment to the Cuneos on the bank's claim for equitable reformation of the security deeds.

3. Additionally, the trial court erred in finding that the Cuneos were not judicially estopped from claiming that Mrs. Cuneo's interest in the property was unencumbered.

13

The common law equitable doctrine of judicial estoppel provides that a party may not assume a position in a legal proceeding, succeed by maintaining that position, then assume a contrary position "especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." (Citation and punctuation omitted.) *Roberts v. State*, 278 Ga. 610, 612 (604 SE2d 781) (2004). The doctrine "is most commonly invoked to prevent bankruptcy debtors from concealing a possible cause of action, asserting the claim following the discharge of the bankruptcy and excluding resources from the bankruptcy estate that might have otherwise satisfied creditors." (Citation omitted.) *Period Homes v. Wallick*, 275 Ga. 486, 488 (2) (569 SE2d 502) (2002). Judicial estoppel is "intended to prevent abuse of the judicial process. The circumstances under which it is appropriate are not reduced to any general formula or rule." (Citation omitted). Id. Georgia courts consider the following three factors in determining whether a party is judicially estopped from taking a certain position:

> (1) the party's later position must be "clearly inconsistent" with its earlier position; (2) the party must have succeeded in persuading a court to accept the party's earlier position; . . . absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity; and (3) whether the party seeking to assert an inconsistent

14

position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

(Citation and punctuation omitted). *IBF Participating Income Fund v. Dillard-Winecoff, LLC*, 275 Ga. 765, 766-767 (573 SE2d 58) (2002) We review a lower court's application of judicial estoppel for abuse of discretion. *Klardie v. Klardie*, 287 Ga. 499, 502 (2) (697 SE2d 207) (2010); *Pew v. One Buckhead Loop Condo. Assn.*, 305 Ga. App. 456, 460 (1) (b) (700 SE2d 831) (2010).

(a) Clear Inconsistency. Mrs. Cuneo claims that in her bankruptcy petition she only stated that the refinance loans *may be* a jointly held obligation, and that this representation is not inconsistent with her position in this case that she was not jointly liable and that her undivided one-half interest in the property was unsecured. But the Cuneos never asserted in their bankruptcy petition that Mrs. Cuneo held an unsecured interest in the property that was available to liquidate and pay some of the Cuneos' unsecured creditors. Further, they stated in another portion of their petition that they wanted to reaffirm their jointly-held debt and remain in the house.

(b) Success in Bankruptcy Court. The Cuneos do not dispute that the bankruptcy court discharged their unsecured debts and allowed them to remain in the property.

(c) Unfair Advantage. Finally, the evidence establishes that the Cuneos will derive an unfair advantage if not estopped from claiming that Mrs. Cuneo's undivided half-interest in the house was not subject to the 2003 security deeds, because even if the Bank foreclosed on its security interest in Mr. Cuneo's undivided half-interest, it would be unable to sell the property if Mrs. Cuneo continued to occupy it. Further, Mr. Cuneo's interest in the property would evaporate upon his death, leaving the bank without recourse to recover the funds it paid to refinance the property.

We conclude that the trial court abused its discretion in failing to apply the doctrine of judicial estoppel to bar Mrs. Cuneo from claiming that any mistake that resulted in the refinance loan not being fully secured by the property was not not mutual.

4. The Cuneos argue that the bank is collaterally estopped from making its equitable reformation claim because it could have had the issue of its interest in the property decided by the bankruptcy court. But "[c]ollateral estoppel mandates that the relevant issue actually be decided," *Harper v. GMAC Mortg. Corp.*, 245 Ga. App. 729, 733 (2) (538 SE2d 816) (2000), and the record does not establish that the bankruptcy court decided the issue of the Cuneos' joint liability for the mortgage debt. The record contains no copy of the bankruptcy discharge, and other than the

16

bank's admission that Mr. Cuneo's personal indebtedness on the mortgage notes was discharged, neither this court nor the trial court has any evidence documenting what the bankruptcy court did and did not consider. Therefore, the bank is not collaterally estopped from claiming that the security deeds should be equitably reformed.

Under the facts presented, the trial court erred in denying summary judgment to the bank and granting summary judgment to the Cuneos on the bank's claim to equitable reformation of the 2003 security deeds.

*Judgment reversed. Boggs and Branch, JJ., concur*.