**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 1, 2026**

# In the Court of Appeals of Georgia

A26A0792. THOMPSON v. THOMPSON et al.

HODGES, Judge.

This appeal arises from a family dispute over a half-acre of land in Rabun County known as "Tract 5(A)." There are two conflicting deeds purporting to convey Tract 5(A): one, recorded in April 1991, allegedly conveys the land to H. Jimmy Thompson; the other, recorded in August 1991, ostensibly conveys the same parcel to Anthony Thompson. Both deeds were executed by Carrie Thompson. Nearly 35 years after these purported conveyances, Anthony and his wife[1] filed a declaratory judgment action against Jimmy, seeking to establish ownership of the parcel. The

---

[1] Anthony entered into a joint tenancy with his wife, Lorie Thompson, regarding Tract 5(A) and the larger tract it is part of, Tract 5, on April 25, 2001. For ease of reference throughout this opinion, this Court will refer to Anthony and Lorie collectively as "Anthony."

parties then filed cross motions for summary judgment. Following a hearing, the trial court granted Anthony's motion for summary judgment and denied Jimmy's. Jimmy appeals, arguing that the trial court erred in granting Anthony's summary judgment motion because the April 1991 deed is ambiguous and parol evidence should have been admitted to explain it. Jimmy also argues that the trial court erred in denying his summary judgment motion when it failed to find that Anthony's claim was barred by laches. We disagree and affirm.[2]

> On appeal from the grant of summary judgment, the appellate court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

*Bank of Am. v. Cuneo*, 332 Ga. App. 73, 74 (770 SE2d 48) (2015) (citation and punctuation omitted). "On cross-motions for summary judgment, each party must show there is no genuine issue of material fact and that each, respectively, is entitled to summary judgment as a matter of law; either party, to prevail by summary

---

[2] "[O]ur court has been assisted by excellent briefs furnished by counsel for all parties which have simplified the facts and issues. This is characteristic of appellate advocacy at its best." *Waters v. Groover*, 138 Ga. App. 276 (226 SE2d 74) (1976).

judgment, must bear its burden of proof." *White v. Gens*, 348 Ga. App. 145, 146(1) (820 SE2d 254) (2018) (citations and punctuation omitted).

The following facts are undisputed: Tract 5(A) was owned by Anthony's father, Furman Thompson, from February 1990 until his death in November 1990. At the time of his death, Furman was married to Carrie, but during his lifetime, Furman remained the sole owner of the property. On February 4, 1991, Carrie was appointed administrator of Furman's estate. As outlined above, Carrie signed two deeds, one purporting to convey Tract 5(A) to Jimmy, and the other purporting to convey it, along with additional acreage, to Anthony.

Jimmy's deed on its face provides that: "THIS INDENTURE [is] [m]ade this [ _____ ] day of OCTOBER in the year of our Lord[,] One Thousand, Nine Hundred and NINETY, between FURMAN THOMPSON ... and H. JIMMY THOMPSON[.]" Although the day of the signature is left blank, this deed was recorded about six months after the purported October 1990 signing date, on April 16, 1991. It was signed by a notary public and by another witness, though neither of whose signatures are dated. Carrie signed the deed, which purports to convey only Tract 5(A), but her signature appears on a line under which is printed "FURMAN

THOMPSON." Other than her signature, Carrie's name appears nowhere else on the document.

Anthony's deed on its face provides that: "THIS INDENTURE [is] [m]ade this 16th day of August in the Year of Our Lord[,] One Thousand Nine Hundred and Ninety-One between CARRIE LOUISE THOMPSON ... and ANTHONY THOMPSON[.]" This deed purports to convey to Anthony 10.61 acres of land, known as Tract 5, including the disputed half-acre Tract 5(A). It was recorded a few days after Carrie signed it, on August 21, 1991. Carrie's signature appears above a line under which her name is printed. The deed is signed and dated by a notary public, and also signed by another witness.

The remaining facts we view, as appropriate, pursuant to the standards set forth above in *Bank of America*, 332 Ga. App. at 74, and *White*, 348 Ga. App. at 145(1).

Jimmy avers that in 1990, he served as executor of the estate of Eva Thompson, his grandmother. As executor, he transferred estate property to Eva's heirs: He transferred Tract 4 to his father, Howard Thompson, and Tract 5 to his uncle, Furman. Furman is Anthony's father. Both transfers took place on February 26, 1990. In an affidavit, Jimmy avers that in exchange for his services in settling Eva's estate,

4

Furman and Howard agreed that he should receive land—namely, the half-acre parcel presently in dispute, Tract 5(A), and a one-acre parcel called Tract 4(A), which is not in dispute. A plat was prepared in July 1990, carving Tracts 4(A) and 5(A) out of the original, larger tracts. Jimmy, in a sworn affidavit, avers that Furman and Howard had their attorney draw up deeds transferring these tracts to him. But, Jimmy avers, Furman fell ill before signing the deed to transfer Tract 5(A) to him, and he died intestate in November 1990. As noted above, the face of Jimmy's deed shows that Carrie executed it the month prior to Furman's death, in October 1990. Carrie was appointed administrator of Furman's estate on February 4, 1991.

In 2025, Anthony filed a complaint seeking a declaration that Tract 5(A) was his, asserting that Jimmy recently had the property lines surveyed and made statements causing Anthony to believe Jimmy would "log or otherwise trespass" on the property. Jimmy answered and counterclaimed, seeking, among other things, a declaration that his deed is valid, or if it is not, a declaration that he has adversely possessed the property and that Anthony should be estopped from asserting ownership because he waited too long to bring suit. The parties filed cross motions for

summary judgment, and following a hearing and the trial court's grant of Anthony's motion for summary judgment and denial of Jimmy's, Jimmy appealed.

1. We begin by examining Jimmy's contention that the trial court erred in not finding that Anthony's claim to Tract 5(A) was barred by laches. We find no abuse of discretion.

Courts of equity "may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights." OCGA § 9-3-3. "Of course, laches does not arise from delay alone. To prevail on a plea of laches, prejudice, too, must be shown." *Stone v. Williams*, 265 Ga. 480 (458 SE2d 343) (1995). More specifically, "an equitable action is barred when the truth cannot be established fairly due to a long delay and the death of essential witnesses." Id.[3] Jimmy argues that his case has been prejudiced by Anthony's years-long delay because essential witnesses have died—Carrie died in 2008; both Howard and the attorney who prepared Jimmy's deed died in 2009.

---

[3] Anthony contends that laches is not a valid defense in a declaratory judgment action because it is an equitable defense not applicable to actions at law. As Jimmy argues, however, the record shows that Anthony never raised this issue in the trial court; we, therefore, will not address it. *OVIP, Inc. v. Blockbuster Textiles, LLC*, 289 Ga. App. 276, 278(1) (656 SE2d 907) (2008) ("[I]ssues presented for the first time on appeal furnish nothing for us to review[.]") (citation and punctuation omitted).

However, we must first determine whether laches is an available defense in this instance. "The question of laches is addressed to the sound discretion of the trial court, and on appeal the exercise of that discretion will not be disturbed unless it is so clearly wrong as to amount to an abuse of discretion." *Waller v. Golden*, 288 Ga. 595, 597(1) (706 SE2d 403) (2011) (citation and punctuation omitted).

Here, Anthony contends that Jimmy's defense of laches is inapplicable because Anthony has been in peaceable possession of the property. "Laches will not be imputed to one in peaceable possession of property for delay in resorting to a court of equity to establish his right to the legal title." *Shirley v. Shirley*, 209 Ga. 366(2) (72 SE2d 719) (1952) (citation and punctuation omitted). Jimmy counters that Anthony was not in peaceable possession of the property because there is no evidence that Anthony had engaged in any actual use or improvement of the property. He cites several adverse possession cases, arguing that these cases indicate that peaceable possession means actual possession as evidenced through some sort of improvements on the land. See, e. g., *Sacks v. Martin*, 284 Ga. 712, 713-14(1), 716(3) (670 SE2d 417) (2008) (finding that in adverse possession action, actual possession as evidenced by improvements to the land made by adverse possessor without title trumped

7

constructive possession by party who had title, meaning that adverse possessor was in peaceable possession and his claim was not barred by laches). However, our Supreme Court has indicated that this is not the only factor to be considered. Our Supreme Court has held: "The words peaceable possession ... must have a meaning very similar to, if not the same, with the words quiet enjoyment, in a covenant for quiet enjoyment. And, to constitute a breach of a covenant, for quiet enjoyment, there must be an actual ouster." *The Lessee of Gittens v. Lowry*, 15 Ga. 336, 338-39 (1854 Ga. LEXIS 45) (1854) (punctuation omitted). Nothing in *Sacks* indicates that the adverse possessor had been ousted from the land. Further, in another case Jimmy cites, *Unified Gov't of Athens-Clarke County v. Stiles Apts., Inc.*, 295 Ga. 829, 834(4) (764 SE2d 403) (2014), the Court, in finding that a party was in peaceful possession and that its claims were not barred by laches, noted that the party had, among other things, paid taxes on the property. Here, Anthony has lived on Tract 5 since 2001 and paid property taxes on the entire plot, which includes Tract 5(A) since 1991. Jimmy avers that he also paid taxes on Tract 5(A) during the times that he claimed ownership of it; his father paid the taxes on it the rest of the time. He further avers that the county taxed him on Tract 5(A) along with an adjoining 15.5 acre tract he owns "as one 16-

acre parcel." Nothing, however, indicates that Anthony has been ousted from the land such that he is not in peaceable possession of it.

Moreover, although Jimmy argues that he was prejudiced in proving his case by the deaths of Furman, Carrie, and the attorney who Jimmy says drew up his deed, Anthony was equally prejudiced, at least by the deaths of Furman and Carrie, who could have testified to what they intended for Tract 5(A). We are mindful that for laches to apply, prejudice must be shown. *Stone*, 265 Ga. at 480. Here, neither Anthony nor Jimmy promptly asserted their rights to the disputed property. If, for example, Anthony was placed on constructive notice by the recording of Jimmy's deed, Jimmy likewise was placed on constructive notice by the recording of Anthony's deed. And because "any delay in seeking relief applies equally to both parties, [Jimmy] may not invoke the rule of laches." *Curry v. Curry*, 267 Ga. 66, 68(1) (473 SE2d 760) (1996).

The trial court used a different rationale to find that the laches defense was barred. However, we will uphold a trial court's determination in a summary judgment matter if it is right for any reason. *Hot Shot Express, Inc. v. Assicurazioni Generali, S.P.A.*, 252 Ga. App. 372, 373 (556 SE2d 475) (2001). The trial court was not "clearly

wrong" and did not abuse its discretion in granting summary judgment to Anthony and denying summary judgment to Jimmy. *Waller*, 288 Ga. at 597(1).

2. Jimmy argues that the trial court erred in its summary judgment decisions because the deed purporting to transfer Tract 5(A) to him is ambiguous regarding the execution date of the deed, as well as Carrie's authority to execute the deed and the capacity in which she executed it. Because of this, Jimmy contends, material questions of fact exist and parol evidence should be considered to resolve them. We disagree.

> The interpretation of the language in a deed is generally a question of law unless it is so ambiguous that the ordinary rules of construction cannot resolve the ambiguity. The cardinal rule of construction is to ascertain the intention of the parties. The mere existence of two possible interpretations to a deed or contract does not automatically transform the issue into a jury question; the judicial responsibility of a court is higher than that of mere referee. Construction of ambiguous deeds is the duty of the court, and only if ambiguity remains after application of the pertinent rules of construction will extrinsic evidence be admissible to explain the ambiguity.

*Dover v. Bowcock*, 259 Ga. App. 852, 854(3) (578 SE2d 559) (2003) (citation omitted). See *Y. C. Dev., Inc. v. Norton*, 344 Ga. App. 69, 73(1) (806 SE2d 662) (2017)

(recognizing that the existence or nonexistence of an ambiguity is generally a question of law for the court).

OCGA § 44-5-30 provides that, "[e]xcept for documents electronically filed ..., a deed to lands shall be an original document, in writing, signed by the maker, attested by an officer as provided in Code Section 44-2-15, and attested by one other witness." In conducting our analysis, we are mindful that parol evidence is generally inadmissible to vary or contradict the terms of a facially valid written instrument. See generally *Parish v. Jackson W. Jones, P.C.*, 278 Ga. App. 645, 647(1) (629 SE2d 468) (2006); OCGA § 24-3-1. More specifically, "[i]n the absence of fraud, accident or mistake, extraneous evidence cannot vary the terms of a written deed." *Hornsby v. Holt*, 257 Ga. 341, 343(1) (359 SE2d 646) (1987).

(a) *Date of execution.* Here, Jimmy contended in the trial court that the date of execution was a mistake, and he argues on appeal that he is entitled to submit parol evidence to show that the October 1990 date on the deed was false. Our appellate courts have indeed permitted the introduction of parol evidence on the issue of an alleged mistaken date in appeals arising from summary judgments. However, they have done so where such parol evidence existed to create a fact question regarding the

alleged mistake. See, e. g., *Helton v. Jasper Banking Co.*, 311 Ga. App. 363, 365-66 (715 SE2d 765) (2011) (finding, in appeal from grant of summary judgment, that introduction of parol evidence in the form of an affidavit contesting the date of a guaranty was permissible).

Here, the only portion of the date of execution that is missing is which day in October 1990 Carrie signed the deed. We note that OCGA § 44-5-30 contains no explicit mandate that a deed, to be at least facially valid, contain a date of execution. See Pindar's Georgia Law and Procedure, § 19:33 (May 2026 update) ("A deed is good although it mentions no date, or a false date, provided the real date of delivery can be proved."). Our law presumes that a deed has been delivered on the date it bears. *McBrayer v. Walker*, 122 Ga. 245, 248 (50 SE 95) (1905).

Even though Jimmy argues that he is allowed to submit parol evidence to challenge a "false" date on a deed, the posture of this appeal is from the grant and denial of motions for summary judgment. There is no material question of fact regarding the date of execution of the deed. Further, Jimmy points to no conflicting evidence regarding the date on which Carrie signed the deed, either in his affidavits or elsewhere. See generally *Fresh & Fancy Produce, Inc. v. Brantley*, 190 Ga. App. 128,

129(2) (378 SE2d 379) (1989) (finding that "the shadow of an issue by speculation" is insufficient to overturn a summary judgment decision). The only evidence of the execution date is on the face of the witnessed, notarized deed, which indicates that Carrie signed it sometime in October 1990, prior to Furman's death in November 1990. As the deed is facially unambiguous, the trial court did not err in refusing to considering parol evidence related to the date of execution of the deed. Moreover, whether Carrie executed the deed before or after Furman died, nothing on the face of the deed indicates she did so in any representative capacity, as will be discussed more fully below.

(b) *Carrie's authority to execute the deed, and the capacity in which she did so.* The face of the deed is unambiguous in showing that Carrie executed it prior to Furman's death, and the evidence is undisputed that Furman held sole ownership of the property while he was alive, the only remaining question is whether Carrie executed the deed in some representative capacity.

Nothing on the face of the deed indicates that she did. Her signature appears over a signature line denominated "FURMAN THOMPSON." Her name appears nowhere else in the deed. No language indicating any agency or representative

capacity appears on the face of the deed. On the face of the deed, only Furman is the maker, and it is undisputed that he did not sign the deed. OCGA § 44-5-30 (providing that a deed must be "signed by the maker"). While it is true that

> [p]arol evidence to show the capacity in which a person signed an instrument is admissible [where] it does not contradict the writing but simply explains the transaction[,] ... [w]e are aware of no authority prohibiting proof by parol evidence that the authority for the signing of a contract by a person for one of the parties cannot be proved by parol *when the contract itself shows the signer did not act as an individual but acted in a representative capacity*.

*Maxwell v. Tucker*, 118 Ga. App. 695, 697(2) (165 SE2d 459) (1968) (emphasis added). See also *Brega v. CSRA Realty Co.*, 223 Ga. 724, 725-26 (157 SE2d 738) (1967) (finding "parol evidence is inadmissible to add to, take from, or vary the written contract" where sales contract specified that the defendant corporation was the seller and a vice president signed the sales contract, "but there [was] nothing in the body of the contract or at the place of signature to show that [the vice president] was acting as agent for the corporation").

Here, there is nothing in the deed itself showing that Carrie acted in any capacity other than as an individual. Nothing in the deed shows that she acted in a

representative capacity, either for Furman while he was alive, or—were we to consider the execution date ambiguous, which we do not—as the administrator of his estate after he died. As a result, the trial court did not err in refusing to admit parol evidence, and there are no questions of fact for jury resolution.

In sum, the trial court did not err in granting summary judgment to Anthony and in denying it to Jimmy.

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*