40170. CHEELY et al. v. STATE OF GEORGIA et al.

SMITH, Justice.

Appellees Hancock County and Hancock County Hospital Authority (the "authority") entered into a contract whereby the authority agreed to issue revenue anticipation certificates totaling $3.1 million, backed by the county's taxing power, to finance extensive renovation and reopening of Hancock Memorial Hospital. If reopened, the hospital, which has been closed since 1975, would be the only major health care facility in Hancock County. Pursuant to OCGA § 31-7-81 (Code Ann. § 88-1810), the state filed its petition in Hancock Superior Court to confirm and validate the proposed revenue anticipation certificates and county-authority contract. Appellants, individual citizens and taxpayers residing in Hancock County, intervened and raised various constitutional and statutory challenges to the proposed validation.

Following discovery, the trial judge granted appellees' motion for partial summary judgment, reserving for trial resolution of two factual issues: the feasibility of the proposed renovation, and alleged abuses of authority by certain Hancock County officials. After a six-day bench trial, the trial judge ruled in favor of appellees on these issues and entered an order validating the revenue anticipation certificates. Intervenors-appellants bring this direct appeal. We affirm.

1. In their first enumeration of error, appellants contend that Senior Judge James B. O'Connor improperly presided over the trial of this case. The present lawsuit represents the state's second attempt in recent months to validate financing for renovation of the Hancock County facility. In June 1982, the state initiated validation proceedings in Hancock Superior Court and a group of citizens intervened. On August 13, 1982, Chief Judge Joseph B. Duke of the Ocmulgee Judicial Circuit filed a written order requesting that Senior Judge O'Connor preside over those proceedings. Later that month the state voluntarily dismissed its petition pursuant to a resolution of the hospital authority requesting dismissal. Judge O'Connor's August 23, 1982 order denying the intervenors' motion to strike the voluntary dismissal was affirmed in *Cheely v. State,* 165 Ga. App. 755 (302 SE2d 435) (1983).

While the appeal of the initial validation proceeding was pending, the state in September 1982 commenced the present action by filing the validation petition now on appeal, and the same group of citizens intervened. The revenue certificates sought to be validated had been substantially revised both in amount and structure from the earlier certificates. Judge Duke again asked Senior Judge O'Connor

to preside over the case. His oral request to that effect was confirmed by a letter written, at Judge Duke's request, by Eighth District Administrative Assistant Jack Bean and addressed to Judge Duke. Copies of the letter were forwarded to Senior Judge O'Connor and the clerk of Hancock Superior Court.

Appellants contend that all proceedings conducted below in this case are void because no written order authorizing Senior Judge O'Connor to preside over the trial was filed with the clerk of Hancock Superior Court as required by OCGA § 47-8-64 (a) (Code Ann. § 24-2621a). That statute provides that before a senior judge may preside in any superior court, a written request from a superior court judge specifying the time, place and duration of the requested service shall be filed in the office of the clerk of the superior court of the county in which the services are to be performed. We have held that absent compliance with OCGA § 47-8-64 (Code Ann. § 24-2621a), a senior judge has no constitutional or statutory authority to serve in a superior court, and that such authority cannot be conferred retroactively by a nunc pro tunc order. *Adams v. Payne,* 219 Ga. 638 (135 SE2d 423) (1964).

Here a written request sufficient to satisfy the statute was forwarded to the clerk's office of Hancock Superior Court but was never filed for inclusion in the record of the superior court proceedings. We find that under the circumstance of this case, particularly the fact that Senior Judge O'Connor was properly authorized to preside over the state's initial petition (which was later voluntarily dismissed), the letter requesting Senior Judge O'Connor's services in this case substantially complied with the statutory requirements. OCGA § 1-3-1 (c) (Code Ann. § 102-102) provides that "substantial compliance with any statutory requirement, especially on the part of public officers, shall be deemed and held sufficient, and no proceeding shall be declared void for want of such compliance, unless expressly so provided by law." It is uncontroverted that Chief Judge Duke made a timely oral request for Senior Judge O'Connor's services, this request was confirmed in writing, Judge O'Connor was familiar with the case by virtue of having handled the earlier Hancock County validation petition, and that the parties proceeded without objection to the trial of this case. This enumeration is without merit.

2. Appellants' second enumeration is not supported by argument or citation of authority and is deemed abandoned pursuant to Rule 45 of the Supreme Court of Georgia (Code Ann. § 24-4545).

3. In their third enumeration appellants contend that this action should have been abated by the trial judge because at the time this case was filed there was pending an appeal of the state's

voluntary dismissal of the prior Hancock County validation proceeding. We do not agree.

OCGA § 9-2-44 (a) (Code Ann. § 3-607), relied upon by appellants, states: "A former recovery or the pendency of a former action for the same cause of action between the same parties in the same or any other court having jurisdiction shall be a good cause for abatement." In order for a plea of abatement to lie, the pending action must concern the same cause of action as the suit sought to be abated. See *Schoen v. Home Federal Savings &c. Assn.,* 154 Ga. App. 68 (267 SE2d 466) (1980). Here the two validation proceedings filed by the state in Hancock County were separate and distinct claims. Whereas the first suit sought validation of bonds in the amount of $2.85 million, the present suit seeks validation of $3.1 million in bonds. In addition, the due dates on the two sets of bonds are different. Thus it cannot be said that the two proceedings arise out of the same transaction or that allowing the present action to proceed to trial while the first case was pending on appeal was "unnecessary, and consequently, oppressive." *See Rogers v. Hoskins,* 15 Ga. 270, 274 (1854). Appellant's plea in abatement was without merit and was correctly denied by the trial judge.

4. In enumerations 4, 5 and 6 appellants argue that the county-authority contract is illegal in that it requires the county to make payments in excess of those authorized by state statutory and constitutional provisions. The contract's terms essentially provide that in exchange for the county's financial support and its pledge to send all indigent sick persons residing in the county to facilities operated by the authority for medical care, the authority agrees to issue revenue anticipation certificates to finance the hospital renovation project and to maintain adequate health care services to accommodate the county's indigent sick persons.

Appellants assail the contract's validity on two grounds. First they contend that the Georgia Hospital Authorities Law, OCGA § 31-7-70 et seq. (Code Ann. § 88-1801 et seq.), is unconstitutional insofar as it purports to authorize the expenditures called for in the contract. This argument is unconvincing. The Act was long ago held constitutional in *Sheffield v. State School Bldg. Auth.,* 208 Ga. 575 (68 SE2d 590) (1952). See also *Daughtrey v. State,* 226 Ga. 758 (177 SE2d 670) (1970); *Bradfield v. Hospital Auth. of Muscogee County,* 226 Ga. 575 (176 SE2d 92) (1970). Art. IX, Sec. III, Par. I of the 1983 Georgia Constitution (Code Ann. § 2-5001) plainly states that a county "may contract with any . . . public authority for the care, maintenance and hospitalization of its indigent sick and may as a part of such contract agree to pay for the cost of acquisition, construction, modernization, or repairs of necessary land, buildings,

and facilities by such . . . public authority." Appellants' constitutional argument is clearly without merit.

Nevertheless, appellants contend that the county-authority contract contemplates expenditures not authorized by the Hospital Authorities Act. In support of this contention they cite contract provisions providing for funding of the operation and maintenance of the hospital during renovation, a reserve fund for hospital operations, payment of currently outstanding hospital authority obligations, and "such amounts as may be necessary to assure the continued operation and maintenance of the hospital during the term of the contract." These contract provisions, appellants argue, amount to a "blank check" written on the county's tax reserves, limited only by the 7 mills tax limitation applicable to counties generally. See OCGA § 31-7-84 (b) (Code Ann. § 88-1812).

We find the county-authority contract's terms to be authorized by the Hospital Authorities Law. OCGA § 31-7-84 (b) (2) (Code Ann. § 88-1812) permits a county to levy ad valorem taxes, not exceeding 7 mills, to fund "the cost of operating, maintaining, and repairing [hospital authority projects to provide medical care and hospitalization of the indigent sick] . . . and the cost of retiring, refinancing, or refunding any outstanding debt or other obligation of any nature incurred by such authorities." Moreover, OCGA § 31-7-85 (Code Ann. § 88-1813) provides that a county may obligate itself under a hospital authority contract to pay "such sums *as shall be necessary* to provide adequate and necessary facilities for medical care and hospitalization of the indigent sick, including reasonable reserves necessary for expansion and necessary for the payment of the cost of facilities . . ." (Emphasis supplied.) The trial court found that the proposed renovation of Hancock Memorial Hospital was necessary to provide adequate medical facilities for treatment of the indigent sick in Hancock County, and appellants do not contest this finding on appeal. Given this fact, it is beyond argument that the proposed expenditures fall within the broad language of the Hospital Authorities Law quoted above. In *Daughtrey v. State,* supra, this court held that a county hospital authority could validly contract with a county to issue revenue anticipation certificates to finance improvements and additions to an existing hospital facility. Like the contract here, the county-authority contract in *Daughtrey* obligated the county to make payments "as may be necessary to assure the continuous operation of the Authority and to provide reasonable reserves for the expansion of the facilities and services of the Authority." We can discern no meaningful difference between the obligations undertaken by the county here and the county in *Daughtrey.* In view of the terms of the Act and our decision in

*Daughtrey v. State,* supra, we hold that the county-authority contract is valid.

5. We have examined appellants' remaining enumerations of error and find them to be without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 30, 1983.

*Dickens, Mangum, Burns & Moore, Gordon L. Dickens, Jr.,* for appellants.

*Joseph H. Briley, District Attorney, Roosevelt Warren, King & Spalding, A. Felton Jenkins, Jr., Ralph A. Pitts, Bondurant, Miller, Hishon & Stephenson, Robert W. Miller, Julie A. Rempter,* for appellees.

*Alston & Bird, Jack Spalding Schroder, Jr.,* amicus curiae.