**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**February 10, 2015**

# In the Court of Appeals of Georgia

A13A2465. DOCO CREDIT UNION f/k/a DOCO REGIONAL FEDERAL CREDIT UNION v. CHAMBERS et al.

DILLARD, Judge.

DOCO Credit Union f/k/a DOCO Regional Federal Credit Union ("DOCO") filed a quiet-title action in the Superior Court of Lee County in order to establish that it had legal title to certain properties located in that county and upon which it had foreclosed pursuant to the powers of sale contained in several security deeds. Appellees Ida and Cheryl Chambers filed a motion to dismiss and plea in abatement, contending that DOCO's quiet-title action was barred by the Chambers' previously filed lawsuit pending in the Superior Court of Daugherty County, which involved some of the same properties. The Superior Court of Lee County summarily granted Ida and Cheryl Chambers's motion and dismissed DOCO's quiet-title action. On

appeal, DOCO argues that the trial court erred by (1) finding that the Quiet Title Act was subject to abatement by the Dougherty County action; (2) failing to appoint a special master; (3) dismissing the case when Lee County was the only proper venue; and (4) ignoring the venue provisions set forth in the relevant security deeds. For the reasons set forth *infra*, we reverse.[1]

The facts pertinent to our consideration are undisputed. In 2009, William Chambers, Jr. ("Bill Chambers"), son of Ida Chambers and husband of Cheryl Chambers, executed, for the benefit of Chambers Motors, Inc. (the family business), a series of promissory notes in favor of DOCO in exchange for loans totaling over $1.5 million. The promissory notes were secured by several pieces of real property

---

[1] Under GA. CONST. art. VI, § VI, ¶ III (1), the Supreme Court of Georgia has original appellate jurisdiction over "[c]ases involving title to land." And because this Court concluded that jurisdiction might lie with our Supreme Court (*see Tharp v. Harpagon Co.*, 278 Ga. 654, 655 (1) (604 SE2d 156) (2004)), we transferred the appeal to that court for disposition. On May 7, 2014, the Supreme Court of Georgia issued an order transferring the appeal back to this Court, concluding that "the issue raised on appeal does not require the resolution of a question regarding title to land," but instead "involves only whether the trial court erred in deciding that appellant's complaint should be abated or dismissed for failure to state a claim." *See Graham v. Tallent*, 235 Ga. 47, 49 (218 SE2d 799) (1975) (defining "title to land" cases as "actions at law, such as ejectment and statutory substitutes, in which the plaintiff asserts a presently enforceable legal title against the possession of the defendant for the purpose of recovering the land") (citation and punctuation omitted). Then, on May 28, 2014, this Court reinstated the appeal as a September 2014 Term case. *See CC Financial, Inc. v. Ross*, 250 Ga. 832, 834 (3) (301 SE2d 262) (1983).

located in both Crisp and Lee Counties (collectively, the "Properties"). And depending on the ownership of the Properties, the security deeds were purportedly[2] executed by Ida Chambers, individually or as executrix of the Estate of William H. Chambers, Sr., or by Bill Chambers, individually or as the Trustee of the Ida W. Chambers Revocable Trust (the "Revocable Trust") or the Testamentary Trust (the "Testamentary Trust") established under the Last Will & Testament of William H. Chambers, Sr. (collectively, the "Trusts").

Bill Chambers defaulted on the loans, and DOCO obtained a judgment against him for the outstanding balance. Thereafter, in September 2011, DOCO foreclosed on various properties, including six of the eight properties[3] located in Lee County (the "Lee County Properties"), in accordance with the power of sale contained in the security deeds. DOCO was the highest bidder and purchased the Properties at the foreclosure sale. At no time did Ida or Cheryl Chambers object to the foreclosures,

---

[2] Ida and Cheryl Chambers allege that one or more of the signatures on the security deeds were forged. This factual dispute, however, is not relevant to our abatement analysis.

[3] Because two of the security deeds contain what DOCO characterizes as a scrivener's error, in which the names of the interest-holding Trusts are transposed, DOCO did not foreclose on the remaining two Lee County Properties and sought reformation of the security deeds in the Quiet Title Action (described *infra*).

3

nor did any member of the Chambers family make any attempt to pay the outstanding debt in order to save the collateralized Properties.

Following the foreclosures, Bill Chambers filed for Chapter 7 bankruptcy protection. Then, in March 2012, more than six months after the foreclosures, DOCO received a letter from counsel for Cheryl Chambers and the Trusts, alleging that Bill Chambers's conveyance of certain Properties owned by the Trusts constituted a breach of his fiduciary duties, and that DOCO aided and assisted in that breach. The letter concluded that the use of that collateral was void and demanded a return transfer of those Properties and compensation for damages.

After receipt of counsel's correspondence, DOCO filed in the bankruptcy proceeding a motion for relief from stay in order to prosecute a quiet-title action to resolve the claims asserted in the letter. And while that motion was pending, in January 2013, Ida and Cheryl Chambers initiated a lawsuit in the Superior Court of Daugherty County (the "Daugherty County Lawsuit"). In the complaint, Ida and Cheryl Chambers alleged that Bill Chambers and DOCO conspired to unlawfully convert the Properties and asserted against DOCO claims of conversation, aiding in breach of fiduciary duty, conspiracy, interference with business/contractual relations, wrongful foreclosure, civil RICO, and constructive trust. In addition, they sought

4

monetary damages, attorney fees, injunctive relief, and an accounting.[4] Significantly, at no time did Ida or Cheryl Chambers move to set aside the foreclosures.[5] DOCO answered the complaint, denied the allegations, and filed a counterclaim to quiet title to the Properties.

In February 2013, after obtaining relief from the bankruptcy stay, DOCO commenced its quiet-title action in the Lee County Superior Court (the "Quiet Title Action") to remove clouds on the titles of the Lee County Properties so that it could market and sell same. In addition to their answer, Ida and Cheryl Chambers filed a motion to dismiss and plea in abatement, arguing that DOCO's Quiet Title Action was subject to abatement by the previously filed Daugherty County Lawsuit.

[4] Bill Chambers was not named as a defendant in the lawsuit.

[5] Although the Daugherty County Lawsuit included a claim seeking the creation of "a constructive trust as to each [of the Properties] or any income derived therefrom . . . in favor of its respective owner," Ida and Cheryl Chambers cannot claim the right to title to the Properties without first setting aside the foreclosures. *See generally Oduok v. Wedean Properties*, Inc., 319 Ga. App. 785, 787 (1) (a) (738 SE2d 626) (2013) ("The purchaser at a foreclosure sale under a power of sale in a security deed is the sole owner of the property until and unless the sale is set aside." (punctuation omitted)); *accord Vines v. LaSalle Bank Nat'l. Ass'n*, 302 Ga. App. 353, 353 (691 SE2d 242) (2010); *Jackman v. LaSalle Bank, N.A.*, 299 Ga. App. 894, 895 (1) (683 SE2d 925) (2009).

5

Specifically, the motion asserted that the Daugherty County Lawsuit and the Quiet Title Action involved the same parties, represented the same cause of action, and that the Daugherty County court was the only venue with jurisdiction to hear all of the claims between the parties. Finally, the motion alleged that by filing the Quiet Title Action, DOCO sought nothing more than an improper declaratory judgment in an attempt to obtain "an advisory opinion as to the legitimacy of its foreclosures." DOCO opposed the motion, but the Lee County Superior Court, nonetheless, granted it in a summary order. This appeal follows.

1. DOCO first contends that the trial court erred in holding that the Daugherty County Lawsuit abated the Quiet Title Action. We agree.

We begin by acknowledging the long-standing rule that "when two civil actions involving the same cause of action and the same parties remain pending but are filed at different times, the later-filed action is abated and must be dismissed."[6] This ancient and well-established principle is rooted in recognition of the fact that "no one should be twice harassed, if it appear[s] to the Court that it is *for one and the*

---

[6] *Odion v. Varon*, 312 Ga. App. 242, 244 (2) (718 SE2d 23) (2011); *see* OCGA § 9-2-44 (a) ("[T]he pendency of a former action for the same cause of action between the same parties in the same or any other court having jurisdiction shall be a good cause of abatement.").

6

*same cause*."[7] And even if two causes of action are not identical but, technically speaking, "are legally disparate and rest in opposite parties,"[8] the second suit will still be abated if those actions "arise out of the same transaction and if the second suit would resolve the same issues as the first pending suit."[9]

It is against this jurisprudential backdrop that we examine the two causes of action involved in the case *sub judice*. Ida and Cheryl Chambers's first-filed action is based in tort; they seek monetary and punitive damages for the allegedly wrongful foreclosures that resulted from DOCO's fraudulent conduct in conspiring with their son and husband, respectively, to unlawfully use the Properties owned by the Trusts as collateral for loans to the family business. And by electing to pursue monetary damages, Ida and Cheryl Chambers necessarily do not seek a return of title to the

---

[7] *Atlanta Airmotive, Inc. v. Newnan-Coweta Airport Auth.*, 208 Ga. App. 906, 906 (1) (432 SE2d 571) (1993) (punctuation omitted); *see also Rogers v. Hoskins*, 15 Ga. 270, 273 (2) (1854) (same); *Schoen v. Home Fed. Sav. & Loan Ass'n of Atlanta*, 154 Ga. App. 68, 69 (267 SE2d 466) (1980) (same).

[8] *Atlanta Airmotive*, 208 Ga. App. at 906 (1) (punctuation omitted); *see also Schoen*, 154 Ga. App. at 69 (same).

[9] *Atlanta Airmotive*, 208 Ga. App. at 906 (1) (punctuation omitted); *see also Rogers*, 15 Ga. at 274 (2) (same); *Schoen*, 154 Ga. App. at 69 (same); *Hood v. Cooledge*, 39 Ga. App. 476, 478 (1) (147 SE 426) (1929) (same).

Properties, because an "injured party may not *both* set aside or cancel the foreclosure *and also* recover damages for the value of the property."[10]

DOCO, on the other hand, by way of the Quiet Title Action, is seeking to "readily and conclusively establish[ ]" that it is the owner and title holder of the Lee County Properties.[11] Indeed, an action to quiet title, which must be brought in the county in which the land is situated,[12] is a "special statutory proceeding designed for [that] specific purpose."[13] And by adopting the Quiet Title Act of 1966,[14] the General

[10] *Calhoun First Nat'l Bank v. Dickens*, 264 Ga. 285, 286 (1) (443 SE2d 837) (1994) (punctuation omitted).

[11] *Porter v. Houghton*, 273 Ga. 407, 407 (542 SE2d 491) (2001) (punctuation omitted); *see* OCGA § 23-3-60 ("The purpose of this part is to create a procedure for removing any cloud upon the title to land . . . and for readily and conclusively establishing that certain named persons are the owners of all the interests in land defined by a decree entered in such proceeding, so that there shall be no occasion for land in this state to be unmarketable because of any uncertainty as to the owner of every interest therein.").

[12] *See* Ga. Const. Art VI, Sec. II, Para. II ("Cases respecting titles to land shall be tried in the county where the land lies . . . ."); OCGA § 23-3-62 (a) ("The proceeding in rem shall be instituted by filing a petition in the superior court of the county in which the land is situated."); *Smith v. Ga. Kaolin Co., Inc.*, 264 Ga. 755, 755-56 (1) (449 SE2d 85) (1994).

[13] *Woodruff v. Morgan County*, 284 Ga. 651, 651 (1) (670 SE2d 415) (2008) (punctuation omitted); *see also James v. Gainey*, 231 Ga. 543, 544 (203 SE2d 163) (1974) (same).

[14] OCGA § 23-3-60 *et seq*.

Assembly intended to establish "an efficient, speedy and effective means of adjudicating disputed title claims,"[15] so as to "eliminate the possibility that land in this state could not be sold due to any uncertainty about the ownership of any interest in the property."[16] Thus, as the present title holder to the Lee County Properties, a quiet-title action is both an available and appropriate vehicle through which DOCO can establish its right to same.[17]

---

[15] *Nelson v. Ga. Sheriffs Youth Homes, Inc.*, 286 Ga. 192, 192 (686 SE2d 663) (2009) (punctuation omitted); *see also Heath v. Stinson*, 238 Ga. 364, 365 (233 SE2d 178) (1977) (same).

[16] *Cowron & Co. v. Shehadeh*, 268 Ga. 383, 383 (490 SE2d 82) (1997); *see also* OCGA § 23-3-60; *Smith*, 264 Ga. at 756 (2). Because the Quiet Title Act sets forth specific rules and procedures that govern its terms, its statutory provisions control to the extent that they conflict with the Civil Practice Act. *See* OCGA § 9-11-81; *Woodruff*, 284 Ga. at 651-52 (1).

[17] *See Porter*, 273 Ga. at 408 ("In cases such as this involving record title to numerous tracts of land and multiple parties . . ., the quiet title in rem action, which affords complete relief within a procedural framework providing adequate safeguards of the rights of all parties is always available . . . ."); *see also Dykes Paving & Const. Co., Inc. v. Hawk's Landing Homeowners Ass'n, Inc.*, 282 Ga. 305, 305 (647 SE2d 579) (2007) ("To state a claim for quiet title relief, a plaintiff must allege more than a right to acquire title; it must allege that it presently holds current title or current prescriptive title.").

It follows, then, that the two causes of action at issue in this case are neither identical nor do they resolve the same issues.[18] The Quiet Title Action seeks to establish DOCO as the legal title holder of the Lee County Properties, while the Daugherty County Lawsuit seeks to hold DOCO monetarily responsible for the allegedly unlawful acquiring of the titles to those and other Properties. And because the Quiet Title Action to the Lee County Properties was required to be brought in that county, the Superior Court of Daugherty County lacked jurisdiction to consider the petition.[19] Consequently, the Lee County Superior Court erred in dismissing the Quiet

---

[18] *See BBC Land & Dev., Inc. v. Bank of N. Ga.*, 294 Ga. App. 759, 760 (1) (670 SE2d 210) (2008) (application for confirmation not abated by a previously filed action for wrongful foreclosure because a confirmation action is a special statutory proceeding that resolves only issues related to legality of the sale itself); *see also Cheely v. State*, 251 Ga. 685, 687 (3) (309 SE2d 128) (1983) (second validation proceeding not abated by the first because actions involved bonds in different amounts and with different due dates and thus presented separate and distinct claims); *Cf. Schoen*, 154 Ga. App. at 70 (dispossessory action abated by a previously pending lawsuit seeking the cancellation of a fraudulent security deed because "the determination of entitlement to the land in the first action will necessarily dispose of the issue of entitlement in the second action . . .").

[19] For this same reason, DOCO's counterclaim in the Daugherty County Lawsuit cannot be considered a previously filed quiet-title action to the Lee County Properties. *See Aiken Dermatology & Skin Cancer Clinic, P. A. v. DavLong Sys. Inc.*, 314 Ga. App. 699, 703 (2) (725 SE2d 835) (2012) ("If it appears from the face of the pleadings in the first-filed case that the court therein does not have jurisdiction to resolve the pending claims on the merits, then the plea of abatement will not lie and the later-filed suit may proceed forward." (punctuation omitted)); *Bhindi Bros. v.*

10

Title Action, and we must reverse the court's dismissal of DOCO's Quiet Title Action.

2. DOCO next argues that the trial court erred by failing to appoint a special master. Again, we agree.

In Georgia, our Quiet Title Act requires "a trial court to appoint a special master"[20] and for that special master to "make a report of the special master's findings to the trial court."[21] And while the quiet title statutory scheme provides that "the special master, once appointed, shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land . . . or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the judge of the court,

---

*Patel*, 275 Ga. App. 143, 146 (619 SE2d 814) (2005) (same).

[20] *Nelson*, 286 Ga. at 192; OCGA § 23-3-63 ("The court, upon receipt of the petition together with the plat and instruments filed therewith, shall submit the same to a special master who shall be a person who is authorized to practice law in this state and is a resident of the judicial circuit wherein the action is brought.").

[21] *Nelson*, 286 Ga. at 192-93; OCGA § 23-3-66 ("[T]he special master shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land, or any part thereof, which may be adverse to the title claimed by the petitioner, or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the judge of the court.").

11

the trial court is not divested of its overall jurisdiction of the case and its sole authority under OCGA § 23-3-67 to issue the final decree."[22] Thus, in this action to quiet title, the trial court should have appointed a special master to submit a report of its findings. And because we reverse the trial court's dismissal of the Quiet Title Action, we remand the case with direction for the trial court to appoint a special master.[23]

3. Given our holdings in Division 1 and 2 *supra*, we need not address DOCO's remaining claims of error.

For all of the foregoing reasons, we reverse the trial court's order dismissing DOCO's action and remand the case for the court to appoint a special master.

*Judgment reversed and case remanded with direction. Doyle, P. J., and Miller, J., concur.*

---

[22] *Nelson*, 286 Ga. at 193 (punctuation and citation omitted).

[23] *See id.* (remanding the trial court's grant of summary judgment in a quiet-title action when the trial court's summary adjudication lacked findings of fact and a report of the special master's findings); *Woodruff v. Morgan County*, 284 Ga. 651, 652 (1) (670 SE2d 415) (2008) (reversing and remanding the trial court's grant of a default judgment in an in rem quiet-title action when no special master was appointed); *Boyd v. JohnGalt Holdings, LLC*, 294 Ga. 640, 643 (2) (755 SE2d 675) (2014) (finding, with regard to a counterclaim to quiet title, that "the appointment of a special master is mandatory").