**FIRST DIVISION
PHIPPS, P. J.,
BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 15, 2016**

# In the Court of Appeals of Georgia

A15A1996. CRONAN v. JP MORGAN CHASE BANK, N. A.     BO-097

BOGGS, Judge.

Michael A. Cronan appeals from a trial court order dismissing his counterclaim against JP Morgan Chase Bank, N. A. ("Chase").[1] On appeal, Cronan contends that the court erred in dismissing his claim to quiet title and his claim for attorney fees pursuant to OCGA § 13-6-11. He also asserts that the court erred in "refusing to permit examination of Chase's attorney-in-fact." For the following reasons, we affirm in part and reverse in part.

---

[1] This appeal was originally filed in the Georgia Supreme Court, but that court transferred the appeal here on grounds that "there appears to be no issue of equity which could be raised on appeal so as to invoke this Court's equity jurisdiction . . . . Further, a review of the record reveals that appellant currently has both legal title and possession of the land at the heart of his quiet title counterclaim such that it does not involve this Court's title to land jurisdiction."

The underlying facts are largely undisputed. In 2010, Cronan obtained a $417,000 loan from Chase and executed a security deed to secure the debt. The deed listed a parcel ID number and the property address of 2215 Dawnville Beaverdale Rd. in Dalton, Georgia, (hereinafter "2215 Dawnville") under "Transfer of Rights in the Property," and further provided, "See Attached Legal Description." The attached legal description described the property by reference to a plat/survey and by metes and bounds, and added: "Commonly known as: 2215 Dawnville Beaverdale R, Dalton, GA 30721." But, as the parties agree, the legal description in the deed was for that of 2253 Dawnville Beaverdale Road ("2253 Dawnville"), another property Cronan owned.

In September 2012, after Cronan defaulted on the loan, Chase foreclosed on the property. The advertisement of foreclosure identified 2253 Dawnville as the property to be foreclosed upon. After the foreclosure deed under power of sale was recorded,[2] Chase conveyed its interest in the property to Fannie Mae, and Fannie Mae sought a writ of possession for "2215 Dawnville Beaverdale Rd NE aka 2253 Dalton GA 30721." But the magistrate court found that Fannie Mae had an ownership interest in

_____

[2]This deed listed the property address and description for 2253 Dawnville.

2

2253 Dawnville and did not have a "lien or ownership interest in . . . 2215 Dawnville," and granted Fannie Mae a writ of possession for 2253 Dawnville only.

In February 2014, counsel for Chase signed an Affidavit of Title (recorded on February 18, 2014), asserting that it intended the deed to encumber 2215 Dawnville, that Cronan defaulted on the loan, that it discovered that the legal description attached to the deed was for the property located at 2253 Dawnville, and that it intended to file suit to correct the error in the deed. In April 2014, Chase filed a complaint for reformation, declaratory judgment, and equitable relief seeking to correct the legal description in the deed to reflect that the deed was intended to encumber 2215 Dawnville,[3] void the foreclosure sale and reinstate the security deed, and return the parties "to their respective positions and holding their respective interests in the property."

In June 2014, Cronan filed an answer and a counterclaim for libel and abusive collection. He subsequently filed a motion to compel and for attorney fees, a separate motion for attorney fees, a motion to dismiss Chase's complaint, and a motion to

---

[3]Chase asserts that although Cronan recorded a survey showing the creation of 2215 Dawnville, that tract is being taxed as part of, and had never been formally subdivided out of, a 29.71-acre tract of land known as 2235 Dawnville Beaverdale Road.

3

dismiss lis pendens.[4] Chase voluntarily dismissed its complaint without prejudice on August 8, 2014.[5] Chase's counsel signed a second Affidavit of Title on August 11, 2014, and it was filed the same day.

On September 24, 2014, Chase moved to dismiss Cronan's counterclaim. On October 28, however, Cronan filed an amended answer and verified counterclaim to quiet title. Following a hearing, the trial court denied Cronan's pending motions and dismissed his counterclaims. It is from this order that Cronan appeals.

1. Cronan argues that the trial court erred in dismissing his quiet title claim. Assuming without deciding that Chase properly moved to dismiss this claim, we agree.

> A motion to dismiss pursuant to OCGA § 9-11-12 (b) (6) will not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. The main consideration of such a motion to dismiss is whether, under the assumed set of facts, a right to some form of legal

---

[4]Chase cancelled this lis pendens and instead filed its second Affidavit of Title.

[5]Chase explains that it was in the process of repurchasing the property from Fannie Mae, and that the repurchase was finalized in September 2014.

4

relief would exist. If material allegations are missing from a pleading, then the pleading fails. [An appellate court's] review of a trial court's ruling on a motion to dismiss is de novo.

(Citations and punctuation omitted.) *Cumberland Contractors v. State Bank and Trust Co.*, 327 Ga. App. 121, 125-126 (2) (755 SE2d 511) (2014).

Cronan's verified counterclaim to quiet title asserted that Chase's First and Second Affidavits and its "actions in falsely or maliciously reporting the foreclosure of his homeplace a/k/a 2215 Dawnville to mortgage and/or credit reporting companies . . . cast a cloud over [Cronan's] title to his homeplace, and/or otherwise subjects him to future liability or present annoyance."

OCGA § 23-3-61 provides in part that

[a]ny person . . . who claims an estate of freehold present or future or any estate for years of which at least five years are unexpired, including persons holding lands under tax deeds, in any land in this state, whether in the actual and peaceable possession thereof or not and whether the land is vacant or not, may bring a proceeding in rem against all the world to establish his title to the land and to determine all adverse claims thereto or to remove any particular cloud or clouds upon his title to the land, including an equity of redemption, which proceeding may be against all persons known or unknown who claim or might claim adversely to him . . . .

5

The purpose of this equitable remedy

> is to create a procedure for removing any cloud upon the title to land, including the equity of redemption by owners of land sold at tax sales, and for readily and conclusively establishing that certain named persons are the owners of all the interests in land defined by a decree entered in such proceeding, so that there shall be no occasion for land in this state to be unmarketable because of any uncertainty as to the owner of every interest therein.

OCGA § 23-3-60.

Cronan asserted that only 2253 Dawnville was intended to be encumbered by the deed as shown by the legal description contained therein, and that 2215 "is merely a reference to a mailing address at which [Cronan] could be reached." Chase, on the other hand, asserted that the deed was intended to encumber 2215 Dawnville. The allegations of Cronan's counterclaim disclose that he would be entitled to relief if it is determined that he does in fact hold unencumbered legal title to 2215 Dawnville (which he alleges he currently holds), and that Chase through the filing of the Affidavits of Title and the foreclosure and resulting Deed Under Power, cast a cloud upon that title. The trial court therefore erred in dismissing Cronan's counterclaim to quiet title. See, e. g., *DOCO Credit Union v. Chambers*, 330 Ga. App. 633, 637 (1) (768 SE2d 808) (2015) (trial court erred in dismissing quiet title action).

6

2. Cronan also appeals from the dismissal of his claim for attorney fees pursuant to OCGA § 13-6-11. The trial court ruled that Cronan's claim for attorney fees fails because it found "no merit in his other claims." In light of our reversal of the dismissal of Cronan's quiet title claim in Division 1, we would ordinarily reverse the court's denial of his claim for attorney fees pursuant to OCGA § 13-6-11. See, e. g., *Omni Builders Risk, Inc. v.* Bennett, 325 Ga. App. 293, 298 (3) (750 SE2d 499) (2013). But, as the trial court also noted in passing, "a plaintiff-in-counterclaim cannot recover attorney's fees under OCGA § 13-6-11 unless he asserts a counterclaim which is an independent claim that arose separately from or after the plaintiff's claim." (Citations omitted.) *Byers v. McGuire Properties*, 285 Ga. 530, 540 (6) (679 SE2d 1) (2009). In *Byers*, the Georgia Supreme Court held that where the plaintiff brought an action seeking, among other things, cancellation of a deed, a decree to quiet title, and equitable subrogation, the plaintiff-in-counterclaim could not recover attorney fees because his quiet title counterclaim was not independent from the underlying/original complaint. Id. As in *Byers*, Cronan's counterclaim to quiet title did not arise separately from Chase's claim to reform the deed and void the foreclosure. See id. The trial court therefore did not err in dismissing Cronan's claim for attorney fees pursuant to OCGA § 13-6-11.

7

3. Cronan argues that the trial court erred in refusing to permit examination of Chase's attorney-in-fact. The record reveals that Cronan served a subpoena for Chase's counsel to appear to give testimony concerning the Affidavits of Title she filed as the deponent. Chase's counsel moved to quash the subpoena on the ground that, inter alia, the request violates the attorney-client privilege and is overly burdensome, unreasonable and oppressive. During a hearing, the court effectively granted the motion to quash by ruling simply, "I'm not going to require her to testify."

"A trial court has discretion to quash an unreasonable and oppressive subpoena, and abuse of discretion is the appropriate standard of review in such situations." (Citations and punctuation omitted.) *Bazemore v. State*, 244 Ga. App. 460, 463 (2) (535 SE2d 830) (2000); see also *LecStar Telecom, Inc. v. Grenfell*, 273 Ga. App. 712, 715 (4) (616 SE2d 482) (2005); OCGA § 24-13-23 (b) (1). Cronan argues on appeal that he was entitled to question Chase's counsel concerning her stated knowledge of the subjective intent of Chase and Cronan with regard to the security deed. He asserts that Chase's counsel's averments in the Affidavits of Title "go[ ] far beyond an objective evaluation of title by purporting to know Cronan's subjective intent, which cannot be discerned by reviewing documents filed in a clerk's office."

8

OCGA § 44-2-20 provides in part that

> [r]ecorded affidavits shall be notice of the facts therein recited, whether taken at the time of a conveyance of land or not, where such affidavits show . . . [t]he relationship of parties or other persons to conveyances of land; . . . [or] state any other fact or circumstance affecting title to land or any right, title, interest in, or lien or encumbrance upon land.

OCGA § 44-2-20 (a) (1), (9).

Here, both Affidavits of Title assert allegations concerning the execution of the deed: that Chase intended the deed to encumber 2215 Dawnville, Cronan's default on the loan, Chase's discovery that the legal description attached to the deed was for the property located at 2253 Dawnville, that Chase intends to file suit to correct the error in the deed, and that the purpose of the affidavits is to put all on notice of Chase's claimed interest in the property. The second Affidavit of Title adds that Cronan disputes that 2215 Dawnville was the intended collateral. All of these allegations simply describe either the relationship of the parties, or other objective facts or circumstances affecting title to the property. Moreover, nearly all of these allegations are asserted or confirmed by Cronan either in his answer to Chase's complaint, his counterclaim, or his brief on appeal to this court.

9

Under these circumstances, we cannot conclude that the trial court abused its discretion in refusing to allow Cronan to question Chase's counsel. See *In the Interest of N. S. M.*, 183 Ga. App. 398, 399 (2) (359 SE2d 185) (1987) (trial court did not abuse its discretion in refusing to allow witness to testify in termination action when all information sought by petitioners had been obtained through other sources and at best cumulative).

*Judgment affirmed in part, reversed in part. Phipps, P. J. and Rickman, J, concur.*