**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 18, 2020**

# In the Court of Appeals of Georgia

A20A0378. JPMORGAN CHASE BANK, N.A. v. CRONAN.

RICKMAN, Judge.

JPMorgan Chase Bank, N.A. appeals several rulings by the trial court in consolidated actions filed by Chase concerning which of two parcels of real property owned by Michael Cronan was used as security for a loan from Chase. Because admissible evidence raises an issue of fact regarding Chase's claims, we reverse the trial court's rulings in favor of Cronan and affirm the denial of Chase's motion for summary judgment on its claim of equitable subrogation.

Construed in favor of Chase, the record shows that in 2003, Cronan took title to a 29.71-acre parcel of property with the address 2215 Dawnville Beaverdale Road (hereinafter "2215 Dawnville") and, in a separate transaction, an adjoining 4.37 acre parcel of property that later became associated with the address 2253 Dawnville

Beaverdale Road (hereinafter "2253 Dawnville"). In 2005, Cronan utilized a 3.14-acre portion of the 29-acre tract as collateral for a $350,000 construction loan from Synovus Bank for the purpose of building his primary residence thereon; a survey of the 3.14-acre parcel is in the record. The Synovus Security Deed describes the associated collateral by reference to the survey.

In 2009, Cronan corresponded with Chase and expressed interest in consolidating the Synovus loan and a separate line of credit. In July 2009, an appraisal was prepared for Chase "for the real property at: 2215 Dawnville . . ."; the appraisal indicated that the owner lived at the premises shown in attached pictures, which Cronan identified as his home, but it also referenced the appraised property with the parcel ID and acreage for 2253 Dawnville.

The closing of the Chase loan occurred in January 2010, at Cronan's residence. Cronan reviewed documents prepared by Chase and told Chase's attorney/representative that the property description in the proposed security deed described 2253 Dawnville, not the real estate on which his primary residence was located, i.e, 2215 Dawnville. Cronan averred that the Chase attorney "indicated that he understood what I was telling him," made notes in his file, advised that he would

inform someone at Chase of the information, and stated that Chase had a ten-day grace period to approve or decline the executed security deed.

Cronan then signed the closing documents for the $417,000 loan, including the loan application, a promissory note, the Chase Security Deed, and a HUD-1 Settlement Statement. Under a section entitled "Transfer of Rights in the Property," the Chase Security Deed listed a parcel ID number associated with 2253 Dawnville, but gave the property address of 2215 Dawnville; the same section of the deed referenced an attached legal description. The attached legal description, by reference to a plat/survey and by metes and bounds, described 2253 Dawnville, but it added, "Commonly known as: 2215 Dawnville Beaverdale R, Dalton, GA 30721."

The primissory note referred to the relevant secured property as 2215 Dawnville. The loan application indicated that the purpose of the transaction was to refinance an existing loan on the primary residence. And the HUD-1 gave the borrower's mailing address and, separately, a "property location," both of which were identified as 2215 Dawnville; Following the closing, the Synovus Security Deed was cancelled of record.[1]

---

[1] The HUD-1 Settlement Statement indicated that the amount paid out to satisfy the prior loan went to Chase, but Rundquist averred that "as of 2010, the Synovus Security Deed was held by Chase."

3

In 2012, Cronan defaulted on the Chase loan, and Chase foreclosed on 2253 Dawnville.[2] Shortly thereafter, Chase signed and recorded two affidavits of title, asserting that it had intended the security deed to encumber 2215 Dawnville and to foreclose on that property.

Chase eventually filed two actions that were later consolidated in which it sought reformation, a declaratory judgment, and equitable relief seeking to correct the legal description in the security deed, void the foreclosure sale, reinstate the security deed, and return the parties "to their respective positions and holding their respective interests in the property." In the alternative, Chase sought equitable subrogation. Chase asserted that the primary theory underlying its claims was "mutual mistake." Cronan answered and filed counterclaims, including one to quiet title in 2215 Dawnville. See *Cronan v. JP Morgan Chase Bank*, 336 Ga. App. 201 (784 SE2d 57) (2016) (in which this Court reversed the dismissal of Cronan's counterclaim),

---

[2] Chase foreclosed on 2253 Dawnville then conveyed its interest in the property to Fannie Mae, and Fannie Mae sought a writ of possession for "'2215 Dawnville Beaverdale Rd NE aka 2253 Dalton GA 30721.'" *Cronan v. JPMorgan Chase Bank*, 336 Ga. App. 201 (784 SE2d 57) (2016). The magistrate court found that Fannie Mae had an ownership interest in only 2253 Dawnville and allowed Fannie Mae a writ of possession for that property only. Id. Chase later repurchased 2253 Dawnville from Fannie Mae. Id.

overruled on other grounds by *SRM Group v. Travelers Property Cas. Co. of America*, _ Ga. _ (Case No. S19G0473, decided Apr. 6, 2020).

In several orders, the trial court held that Chase failed to show a genuine issue of material fact as to its assertion of mutual mistake and therefore granted summary judgment to Cronan on Chase's claims for a declaratory judgment and reformation of the security deed. The court further held that Chase failed to present evidence of a mutual agreement that it would assume a previous encumbrance on 2215 Dawnville, and it therefore granted summary judgment to Cronan on Chase's claim of equitable subrogation and denied Chase's cross-motion on the same issue. Finally, the trial court granted summary judgment in favor of Cronan on his claim to quiet title to 2215 Dawnville. Chase appeals each of these rulings.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" OCGA § 9-11-56 (c).

> Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant [or denial] of a motion for summary judgment, we must view the

5

evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010).

1. Chase contends that when granting summary judgment in favor of Cronan and refusing to reform the security deed, the trial court erred by ignoring the affidavit of its corporate representative, Theresa Rundquist, and, consequently, by concluding that Chase failed to provide any evidence to rebut Cronan's assertion that he did not make a mistake about the collateral.

At a hearing on Cronan's first motion for summary judgment, Cronan objected to introduction of the Rundquist affidavit on the ground that it was not based on personal knowledge.[3] In the ensuing order, the trial court held that Rundquist "did not write her affidavit based on personal knowledge of what the parties intended in

---

[3] We reject Chase's argument that Cronan was required to file a motion to strike in order to raise evidentiary objections to the Rundquist affidavit. Cronan objected in detail at the first summary judgment hearing, including to Rundquist's lack of personal knowledge, and nothing more is required. See *Harris v. State*, _ Ga. _ (2) (a) (837 SE2d 777) (2020) ("[A]t a minimum, a timely objection or motion to strike [is required] to preserve appellate review of a ruling on the admission of evidence."); see, e.g., *Formaro v. SunTrust Bank*, 306 Ga. App. 398, 399-400 (1) (702 SE2d 443) (2010) (recognizing that an objection to an affidavit is one way to preserve appellate review of an affidavit).

executing the [Chase] Security Deed" and that, therefore, Chase had not submitted any admissible evidence to contradict Cronan's affidavit in which he averred that he intended for 2253 Dawnville to be collateral for the 2010 Chase loan. We agree with Cronan that the trial court did not err in finding that parts of the affidavit were inadmissible because they were not shown to be based on personal knowledge.

Rundquist averred that her affidavit was "based upon knowledge gained from my review of the records," that she was employed by Chase "as a Legal Specialist III," and that she was "authorized to execute this [a]ffidavit on behalf of [Chase]." Rundquist then recited a history of the loan transaction based on her review of the attached 19 documents. Among the history, however, there are numerous statements regarding the parties' execution of the 2010 Chase loan and Chase's intent with respect to the collateral.[4]

---

[4] These statements include the following: "Chase advanced [$327,098.05] in exchange for a first priority lien wholly encumbering [2215 Dawnville]"; [t]he description attached to the 2010 Chase Security Deed erroneously describes 2253 Dawnville";"[a]t the time of the foreclosure, Chase was unaware of the error in the 2010 Security Deed and Deed Under Power"; "[t]he Deed Under Power references the same erroneous legal description as contained in the 2010 Chase Security Deed"; "Chase conveyed what was intended to be 2215 Dawnville to [Fannie Mae]"; "[a]t the time . . ., Chase believed 2215 Dawnville was also known as 2253 Dawnville"; and "Chase first learned that the legal description in the 2010 Chase Security Deed did not describe 2215 Dawnville when Fannie Mae made the repurchase demand."

7

Affidavits supporting or opposing motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in the evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." OCGA § 9-11-56 (e).[5] Affidavits from corporate representatives are subject to the same rule. See *Lubbers v. Tharpe & Brooks*, 160 Ga. App. 709, 710 (288 SE2d 54) (1981). In lieu of a statement that the affidavit is based on personal knowledge, the requirement may be satisfied where the contents of the affidavit show that statements are based on personal knowledge. See *Mathews v. Brown*, 235 Ga. 454, 456 (219 SE2d 701) (1975); *Holland v. Sanfax Corp.*, 106 Ga. App. 1, 5 (1) (126 SE2d 442) (1962).

(a) Here, Rundquist never averred that her statements were based on personal knowledge, and nothing in the contents of the affidavit shows that she had personal knowledge of what Chase intended as collateral in the 2010 loan transaction. Accordingly, the trial court did not abuse its discretion by finding that these parts of Rundquist's affidavit were not admissible. See *Greenstein v. Bank of Ozarks*, 326 Ga. App. 648, 652-653 (2) (757 SE2d 254) (2014) (portions of affidavit not based on

---

[5] Verified pleadings used for the same purposes are subject to the same rule. See *Fanning v. Fanning*, _ Ga. App. _ (Case No. A19A2432, decided Mar. 9, 2020); *Franklin v. Eaves*, 337 Ga. App. 292, 295 (2) (77 SE2d 265) (2016).

8

personal knowledge were inadmissable); see also *Langley v. Nat'l Labor Group*, 262 Ga. App. 749, 751 (1) (586 SE2d 418) (2003) ("If it appears that any portion of the affidavit was not made upon the affiant's personal knowledge, or if it does not affirmatively appear that it was so made, that portion is to be disregarded in considering the affidavit in connection with the motion for summary judgment.").

(b) Rundquist also averred that "Chase would not have made the 2010 Chase Loan if the collateral was 2253 Dawnville." This comment pertains to Chase's general practices as opposed to what the parties to the relevant transaction intended. Nevertheless, there is nothing in Rundquist's affidavit showing that she had personal knowledge of Chase's general business practices. Rather, her affidavit states that her comments are based on her review of the documents alone, and she did not give a description of her job at Chase such that the trial court could conclude that she had personal knowledge of Chase's general business practices. Compare *Lee v. Mercury Ins. Co. of Georgia*, 343 Ga. App. 729, 750 (6) (808 SE2d 116) (2017) (holding that affidavit showing that affiant was familiar with the company's underwriting policies and practices was sufficient to establish personal knowledge regarding whether company would have issued insurance policy if it had known the true facts). The trial

9

court therefore did not abuse its discretion by excluding this statement as well. See *Greenstein*, 326 Ga. App. at 652-653 (2).

(c) Chase also contends that the trial court erred by refusing to consider the exhibits attached to the Rundquist affidavit and ignoring other admissible documents of record.[6] But we find no indication in the trial court's order that it refused to consider any exhibits or documents, and therefore, there is nothing for us to review. See *Homelife on Glynco v. Gateway Center Commercial Assoc.*, 348 Ga. App. 97, 106 (6) (819 SE2d 723) (6) (2018) ("Where there is no final ruling upon an issue by the trial court, there is nothing for the appellate court to pass upon, for this court is a court for the correction of errors made in the trial court.") (citation and punctuation omitted). Compare *Federal National Mortgage Assoc. BR-027 v. Harris*, 343 Ga. App. 295, 299-300 (1) (807 SE2d 75) (2017) (finding that although the trial court's order did not state explicitly that certain documents were inadmissible, the court's order indicated that the documents had not been admitted).

---

[6] Whether documents are objectionable should be considered by the trial court prior to ruling on the merits of related issues. See *Federal National Mortgage Assoc. BR-027 v. Harris*, 343 Ga. App. 295, 300 (1) (807 SE2d 75) (2017) (vacating judgment and remanding case with direction that trial court make discretionary evidentiary determinations as to admissibility of documentary evidence). Moreover, Cronan conceded that most of the exhibits to the Rundquist affidavit were authentic and relevant and therefore admissible.

2. Chase contends the trial court misapplied the legal standard for mutual mistake, erred in concluding that there was no issue of fact regarding mutual mistake, and therefore erred in granting summary judgment as to its claims seeking reformation of the Chase Security Deed. We hold that there is an issue of fact as to mutual mistake.

Reformation of a contract is authorized when there is a mutual mistake as to the content of a writing:

> Equity may intervene and reform a conveyance when the instrument fails to express accurately the intention of the parties. A petition for reformation of a written contract will lie where by mistake of the scrivener and by oversight of the parties, the writing does not embody or fully express the real contract of the parties. The cause of the defect is immaterial so long as the mistake is common to both parties to the transaction. And the negligence of the complaining party will not defeat his right to reformation if the other party has not been prejudiced.

(Citations and punctuation omitted.) *Curry v. Curry*, 267 Ga. 66, 67 (1) (473 SE2d 760) (1996); see also OCGA § 23-2-25. "A mistake relievable in equity is some unintentional act, omission, or error arising from ignorance, surprise, imposition, or misplaced confidence," OCGA § 23-2-21 (a), that results in a conveyance that is "contrary to the intention of the parties in their contract." OCGA § 23-25. But for

11

equity to intervene, the mistake must be shown to be "the mistake of both parties." OCGA § 23-2-31. Finally, "[t]he power to relieve mistakes shall be exercised with caution; to justify it, the evidence shall be clear, unequivocal, and decisive as to the mistake." OCGA § 23-2-21 (c).

The trial court held that in his affidavit, Cronan presented undisputed evidence that he intended 2253 Dawnville to be the collateral for the 2010 Chase loan and that, therefore, any possible mistake in identifying the collateral was not mutual. We disagree.

In his affidavit, Cronan averred that at the time he signed the Chase Security Deed, his mailing address was 2215 Dawnville and that he "did not understand the listing of [his] mailing address to be an identification of the collateral security." He averred that he intended to use 2253 Dawnville as security for the Chase loan and that there was no mistake on his part:

> I can confirm that there was no mistake on my behalf in signing the [Chase] security deed. My intent in doing so was to provide [Chase] with security interest in 2253 Dawnville Beaverdale Road, NE, and not in 2215 Dawnville Beaverdale Road, NE. Based on my interactions with [Chase's] agent and attorney, my understanding was that he had the same intent.

12

Cronan also averred that at the time he executed the Chase Security Deed, 2253 Dawnville was a comparable property that contained a three-bedroom home.

But Chase presented evidence showing that the loan-related documents prepared in advance of and signed at the closing of the Chase loan contained internal inconsistencies that suggest that Chase made a mistake in preparing the documents; these include a loan application stating that its purpose was to refinance the loans on Cronan's primary residence, 2215 Dawnville; a schedule listing real estate owned by Cronan with only 2215 Dawnville listed; an HUD-1, which states both the borrower's mailing address and, separately, a "property location," both of which were identified as 2215 Dawnville; an appraisal of Cronan's primary residence, and the Chase Security Deed itself. These internal inconsistencies raise an issue of fact as to whether the parties intended to encumber 2215 Dawnville, Cronan's primary residence, in connection with the Chase loan, instead of 2253 Dawnville. Compare *Salas v. JP Morgan Chase Bank*, 334 Ga. App. 274, 282 (3) (779 SE2d 48) (2015) (affirming summary judgment in favor of bank on mutual mistake, in part because borrower "executed several documents exhibiting her intent to encumber the lot that included her residence, not an undeveloped property [shown as the collateral in the security deed]"); see generally *Patterson v. Bennett St. Prop.*, 314 Ga. App. 896, 900 (1) (726

13

SE2d 147) (2012) (recognizing that contemporaneous writings made in the course of the same transaction may be construed together). Cronan's affidavit does not eliminate the possibility that Cronan recognized a mistake in the documents, noticed that Chase's attorney/representative appeared willing to proceed without correcting the documents, and decided to proceed anyway. See *Bank of America v. Cuneo*, 332 Ga. App. 73, 79 (2) (770 SE2d 48) (2015) ("[T]he doctrine of mutual mistake is not so narrow as to foreclose its application simply by one party's affidavit asserting that she did not [make a mistake].").

In sum, Cronan's assertion that he intended to use 2253 Dawnville as collateral on the Chase security deed and that the address 2215 Dawnville was just his mailing address is inconsistent with aspects of the documents that he signed related to the transaction. As for Chase, the facts raise an inference that Chase mistakenly used the wrong property description in the Chase Security Deed and failed to correct the mistake thereafter. See *Cuneo*, 332 Ga. App. at 80 (2) (the mistake need not be "literally exactly the same" but only "sufficiently mutual" to find the true intention of the parties); see also *Black v. Nationstar Mortgage*, 344 Ga. App. 217, 221 (809 SE2d 487) (2018) (affirming trial court's reformation of security deed where parties were mutually mistaken that the security deed included both of two parcels of land

14

when in fact it only included one). Whether after recognizing the errors in the documents, the parties agreed to using 2253 Dawnville as the collateral is an issue of fact as is the import of Chase's lack of action in the ten days following the closing. See id.

In conclusion, the trial court erred by granting summary judgment in favor of Cronan on Chase's claims for reformation that turn on whether there was a mutual mistake made by the parties when signing the documents.

3. Finally, Chase contends, in the alternative, that it is entitled to equitable subrogation and that the trial court erred by denying its motion for summary judgment on this ground. We hold that there remain issues of fact.

"Essentially, [the equitable subrogation] doctrine provides that where it was the intent of the parties to substitute a new creditor's rights for the rights of the creditor that is being paid off, the new creditor steps into the shoes of the old creditor in terms of priority." *Chase Manhattan Mortg. Corp. v. Shelton*, 290 Ga. 544, 549 (4) (722 SE2d 743) (2012); see also *Kim v. First Intercontinental Bank*, 326 Ga. App. 424, 426 (1) (a) (756 SE2d 655) (2014). As explained more fully almost a century ago, subrogation is meant to achieve justice "without regard to form" and is designed to meet circumstances of cases as they arrive:

15

"Subrogation" . . . is of equitable origin and benevolence. It is founded upon the dictates of refined justice. Its basis is the doing of complete, essential, and perfect justice between all the parties, without regard to form, and its object is the prevention of injustice. . . The courts incline rather to extend than restrict the principle. The doctrine has been steadily growing and expanding in importance, and becoming general in its application to various subjects and classes of persons, the principle being modified to meet the circumstances of cases as they have arisen.

*Cornelia Bank v. First Nat. Bank*, 170 Ga. 747, 750 (154 SE 234) (1930); see also *Davis v. Johnson*, 241 Ga. 436, 439 (246 SE2d 297) (1978).

More specifically, and applicable to the facts of this case, the doctrine provides,

Where one advances money to pay off an encumbrance on realty either at the instance of the owner of the property or the holder of the encumbrance, either upon the express understanding or under circumstances under which an understanding will be implied that the advance made is to be secured by the senior lien on the property, in the event the new security is for any reason not a first lien on the property, the holder of the security, if not chargeable with culpable or inexcusable neglect, will be subrogated to the rights of the prior encumbrancer under the security held by him, unless the superior or equal equity of others would be prejudiced thereby.

(Citations and punctuation omitted.) *Davis*, 241 Ga. at 438.

16

Here, as we have already held, there is an issue of fact as to whether the parties intended Chase's security deed to encumber 2215 Dawnville. There is also an issue as to whether Chase can be charged with culpable or inexcusable neglect during the transaction or thereafter. See, e.g., *Greer v. Provident Bank*, 282 Ga. App. 566, 569 (639 SE2d 377) (2006). The trial court therefore erred by granting summary judgment in favor of Cronan on this claim but did not err by denying summary judgment in favor of Chase.

*Judgment affirmed in part and reversed in part. Dillard, P. J., and Brown, J., concur.*